Argued and submitted November 6, 2002, at Lewis and Clark School of Law, affirmed May 29, 2003

THOMAS CREEK LUMBER AND LOG CO.,
*Petitioner,*

*v.*

BOARD OF FORESTRY,
*Respondent.*

G60275; A114870 (Control)

NEL-LOG, INC.,
*Petitioner,*

*v.*

BOARD OF FORESTRY,
*Respondent.*

G60283; A114871
(Cases Consolidated)

69 P3d 1238

11-a

Gregory J. Miner argued the cause for petitioners. With him on the briefs were William K. Kabeiseman and Preston Gates & Ellis LLP.

Jas. Jeffrey Adams, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Armstrong and Kistler, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Thomas Creek Lumber and Log Co. (Thomas Creek) and Nel-Log, Inc. (Nel-Log), petition for judicial review of two orders on reconsideration of the Board of Forestry (board). In the first order, the board (1) determined that Thomas Creek had violated ORS 527.670(6), requiring an operator, timber owner, or landowner to notify the State Forester[1] before commencing any "operation," that is, any commercial activity relating to the harvest of forest tree species; (2) concluded that Thomas Creek had violated OAR 629-605-0150(1), providing for a 15-day waiting period after notification and before commencing a harvest operation, unless the waiting period is waived; and (3) assessed civil penalties for those violations. In its second order, the board determined that Nel-Log also had violated the notice and 15-day waiting period requirements and assessed civil penalties. We affirm.

## I. FACTUAL BACKGROUND

We take the facts from the board's orders on reconsideration and from the record. Brent C. Walker owns Thomas Creek. He also owns timberland located in Sections 3, 4, and 34 of what is commonly known as the Powers Creek area of central Marion County. Section 3 is located immediately to the east of Section 4, while Section 34 is located immediately to the north of Section 3. A county road runs generally from southwest to northeast from Section 4 into Section 34.

In November 1998, Walker submitted to the State Forestry Department (department) a notification of timber harvest operation on approximately 20 acres of land along Powers Creek in Section 4. The notification named Thomas Creek as the landowner and Nel-Log as the operator and stated that the operation would begin on November 18 and end on December 31, 1998. The notification also requested waiver of the requirement under OAR 629-605-0150 that the operator, landowner, or timber owner provide at least 15 days' notice before commencing operations. By written

---

[1] The State Forester is appointed by the Board of Forestry and acts as the chief executive officer of the State Forestry Department. ORS 526.031.

notation on the notification, Forest Practice Forester (FPF) Jackson waived the waiting period.

In December 1998, again on behalf of Thomas Creek and Nel-Log, Walker submitted another notification and request for waiver pertaining to a timber harvest operation in Section 4, stating that the operation would begin on December 23 and end on December 31, 1998. Jackson again waived the waiting period in writing.

After Thomas Creek and Nel-Log had completed their operations in Section 4, they moved their equipment approximately one-quarter mile northeast along the county road and 300 to 400 feet north and east along a logging road into Section 34. In mid-January, they commenced a timber harvest operation at the new location, with Thomas Creek felling the trees and Nel-Log hauling. Neither Thomas Creek nor Nel-Log filed a notification or requested a waiver of the waiting period before beginning that operation.

On January 26, 1999, a department employee reported the existence of the timber operation in Section 34 to FPF Gisler, who had temporarily replaced Jackson. On January 27, after determining that no notification had been filed for an operation in Section 34, Gisler went to the site, where she saw workers yarding and loading logs.

Gisler also saw two small streams near an old barn in Section 34. She directed the workers not to cut any more timber within 100 feet of the streams. On her return to her office, Gisler determined that the streams in question were classified on department water maps as "Type N" streams. Type N streams do not contain fish. OAR 629-635-0200(4)(c). Lands located near such streams do not require riparian management plans or buffers from logging operations. OAR 629-605-0170(1)(a). Gisler reviewed Oregon Department of Water Resources records and learned that there was a registered domestic water right on one of the streams. She then summarily reclassified the stream as a Type D stream, a type of stream with domestic water use, OAR 629-635-0200(4)(b), that requires a riparian management plan for forest operations within 100 feet of its edge, OAR 629-635-0170(1)(a). She did not give notice of the reclassification to adjacent landowners, but she did notify Thomas Creek.

On January 29, Gisler told Walker that a notification was required for the operation in Section 34. That same day, Walker faxed a notification and request for waiver for that operation. The notification named Thomas Creek as the landowner and timber owner and named Nel-Log as the operator. It stated that the operation encompassed five acres, that its estimated starting date was January 18, that its estimated ending date was February 28, and that it pertained to Section 34. The notification was signed by Walker and was dated January 15, 1999. Gisler, however, did not waive the 15-day waiting period.

On February 9, 1999, Gisler told workers at the site to stop all operations at the site. By that time, Thomas Creek and Nel-Log had harvested approximately 27 loads of logs from Section 34. That same day, she also sent a facsimile to Walker and mailed a letter to Nel-Log to the same effect.

On February 24, Gisler issued three citations to Thomas Creek, alleging that it had violated ORS 527.670(6) by failing to notify the State Forester before conducting its operation in Section 34, that it had violated OAR 629-605-0170(1)(a) by failing to obtain prior approval of a written plan before conducting harvest activity within 100 feet of a Type D stream, and that it had violated OAR 629-605-0150(1) by failing to wait at least 15 days following notification before commencing its operation in section 34. Gisler also issued three citations to Nel-Log, asserting the same violations. ORS 527.680(1). In August 1999, the department issued notices of civil penalty and "orders" arising out of the citations. ORS 527.680(2) - (5); ORS 527.683; ORS 527.687; ORS 183.090.

Thomas Creek and Nel-Log requested hearings on the orders. ORS 527.687; ORS 527.700(1). The three citations issued to Thomas Creek were consolidated into a single contested case, as were the three citations issued to Nel-Log. The two contested cases were then consolidated for hearing, which, pursuant to ORS 527.687, was held before a hearing officer assigned from the Hearing Officer Panel established under Oregon Laws 1999, chapter 849, section 3.

In June 2000, the department withdrew the two citations and "orders" that were based on Thomas Creek's and Nel-Log's failure to obtain approval of a written plan

before operating within 100 feet of a Type D stream. The department determined that Gisler had not followed required procedures in reclassifying the stream from a Type N to a Type D.

On July 18, 2000, the hearing officer issued draft proposed orders to the board as to Thomas Creek and Nel-Log, respectively. The hearing officer concluded that Thomas Creek had violated ORS 527.670(6) by failing to provide notification of its operations in Section 34. He also concluded, however, that Thomas Creek had not violated OAR 629-605-150(1), relating to the 15-day waiting period and that Nel-Log had not violated either the notification requirement or the 15-day waiting period requirement, given that Thomas Creek had always provided the notification. The hearing officer awarded attorney fees in favor of both Thomas Creek and Nel-Log based on the finding that the department had lacked probable cause to prosecute the citations pertaining to failure to obtain approval of a written plan.

Petitioners did not file exceptions to the hearing officer's draft proposed order. On August 4, however, the department did. It submitted to the board "exceptions" to the hearing officer's draft proposed orders along with its recommended modifications to the hearing officer's proposed order, spelled out in "legislative format" showing proposed deletions and insertions in the text of the hearing officer's proposed final order. Specifically, the department contended that the hearing officer's proposed final order omitted necessary findings of fact, included erroneous or unnecessary findings of fact, erroneously concluded that Nel-Log had not violated ORS 527.670(6) in failing to provide notification of its operations, erroneously concluded that both Thomas Creek and Nel-Log had not violated OAR 629-605-0150(1) in failing to observe the required 15-day waiting period, and erroneously awarded Thomas Creek and Nel-Log attorney fees and expenses. On May 10, 2001, the board issued final orders adopting the department's modifications. In the final order pertaining to Thomas Creek, the board concluded that Thomas Creek violated ORS 527.670(6) and OAR 629-605-0150(1) by failing to provide notification and observe the 15-day waiting period regarding its operations in Section 34. It imposed a civil penalty of $200 for each of those violations.

It also concluded that Thomas Creek was not entitled to attorney fees. According to the board, the department and the State Forester are not "parties" against whom ORS 527.700(7) authorizes an award of attorney fees. In any event, the board concluded, the department did not act inappropriately in issuing a citation for failure to file a written plan before conducting operations within 100 feet of a Type D stream, even though it turned out that the stream was of a different type.

In the final order pertaining to Nel-Log, the board concluded that, although Nel-Log had previously relied on Thomas Creek to provide notification, under ORS 527.670(6), Nel-Log nevertheless was responsible for filing a notification. It therefore concluded that Nel-Log also violated the statute and OAR 629-605-0150(1), imposed a civil penalty of $400, and denied attorney fees and expenses. Thomas Creek and Nel-Log petitioned for judicial review of the board's orders.

While review was pending, the board issued final orders on reconsideration, which modified the earlier orders in respects not pertinent to the disputes before us and which also reexamined in some detail and reaffirmed its decisions not to award attorney fees to Thomas Creek and Nel-Log. Thomas Creek and Nel-Log filed amended petitions for judicial review to include the new orders.

## II. DISPOSITION OF THE MERITS

On judicial review, Thomas Creek and Nel-Log advance five assignments of error: (1) the board erred in concluding that they violated ORS 527.670(6) in failing to provide notice of operations in Section 34; (2) the board erred in concluding that they violated the 15-day waiting period established in OAR 629-605-0150(1); (3) the board erred in denying their request for attorney fees and expenses; (4) the board erred in permitting the department to file exceptions to the hearing officer's proposed orders; (5) the board failed adequately to explain its rejection of the hearing officer's proposed orders.

A. *First Assignment: Violation of ORS 527.670(6)*

In their first assignment of error, Thomas Creek and Nel-Log argue that the board erred in concluding that they

violated ORS 527.670(6) by not notifying the State Forester before beginning their operation in Section 34. They argue that the board erred as a matter of fact because the department failed to establish that they actually began operations in Section 34. According to Thomas Creek and Nel-Log, the operation was merely a continuation of their previous operation in Section 4, and, without a survey, it was "impossible to tell" that the operation had moved into Section 34. They also argue that the board erred as a matter of law because they did not know that they had commenced operation in Section 34. In any event, they argue, under ORS 527.670(6), only one entity is required to submit a notification for a timber harvest operation and, to the extent any notification was required for the Section 34 operation, Thomas Creek, rather than Nel-Log, was required to submit it.

The board responds that substantial evidence in the record supports its findings that Thomas Creek and Nel-Log moved their equipment a "significant" distance before beginning to harvest trees and that a completely new operation occurred in Section 34 after the ending dates of the operations for which Thomas Creek had filed notifications. As to whether Nel-Log, as well as Thomas Creek, was responsible for the failure to file a notification and request for waiver, the board argues that, under ORS 527.670(6), even if an operator is permitted to rely on notification submitted by the timber owner or landowner, the fact remains that the operator remains liable if no notice at all is submitted.

ORS 527.670(6) provides, in part:

> "An operator, timber owner or landowner, before commencing an operation, shall notify the State Forester. The notification shall be on forms provided by the State Forester and shall include the name and address of the operator, timber owner and landowner, the legal description of the operating area, and any other information considered by the State Forester to be necessary for the administration of the rules promulgated by the board * * *. Promptly upon receipt of such notice, the State Forester shall send a copy of the notice to whichever of the operator, timber owner or landowner did not submit the notification."

In this case, the parties dispute whether, as a factual matter, Thomas Creek and Nel-Log commenced an operation in Section 34 and, if so, whether both Thomas Creek and Nel-Log were required to provide notice of the operation.

■ We review the board's findings for substantial evidence. ORS 183.482(8)(c).[2] "Substantial evidence" exists when the record, viewed as a whole, permits a reasonable person to make the challenged finding. *Id.*

■ Reviewing the record as a whole, we conclude that substantial evidence supports the board's findings relating to the issue whether Thomas Creek and Nel-Log violated ORS 527.670(6). Specifically, there is ample evidence in the record to support the findings that Walker instructed Nel-Log to move its equipment to the new location; that Nel-Log did so; that, starting in mid-January 1999, Thomas Creek and Nel-Log harvested timber from that site; that no previous notification encompassed either the dates or the location of that operation; and that, before beginning the operation, neither Thomas Creek nor Nel-Log filed a new notification pertaining to either the dates or the location of the operation.

Nor did the department fail to demonstrate that the unnotified operation in fact took place in Section 34. The record shows that, when informed by Gisler on January 29 that there was no notification on file for the operation being conducted, Walker filed a notification that itself listed Section 34 as the relevant section. In addition, in the contested case hearing, when asked by his counsel whether he had instructed Nel-Log to move its equipment "over into this area which we now know to be Section 34," Walker replied, "Yes." Similarly, Walker agreed that the loads of logs listed on a loading summary sheet admitted into evidence "came out of what we now know to be Section 34." In effect, Walker conceded at the hearing that the operation at issue took place in Section 34. It is true that Walker also testified that, "without

---

[2] We note that, under section 12(4) of Oregon Laws 1999, chapter 849, "[i]f a party seeks judicial review of an agency's modification of a finding of historical fact" made by a hearing officer assigned from the Hearing Officer Panel established under that act, the reviewing court "shall make an independent finding of the fact in dispute by conducting a review de novo of the record viewed as a whole." We do not understand that standard of review to apply here, nor do petitioners contend that it does.

doing a survey, there's still no way to know for sure" which section the operation involved. Nevertheless, the record as a whole supports the board's determination that the operation took place in Section 34.

As noted, Thomas Creek and Nel-Log also argue that, as a matter of law, they were not required to submit the notification required by ORS 527.670(6) because they had no knowledge at the time they commenced the operation that they were in Section 34. That presents a question of statutory construction. An agency's interpretation of a statute may be entitled to some measure of deference, depending on whether the disputed terms are exact, inexact, or delegative in nature. *Springfield Education Assn. v. School Dist.*, 290 Or 217, 223, 621 P2d 547 (1980). In this case, the disputed provision of ORS 527.670(6) is not exact, nor is it delegative in nature. Therefore, it is an inexact term, and the board's interpretation of it is reviewed as a matter of law, *Coast Security Mortgage Corp. v. Real Estate Agency*, 331 Or 348, 353-55, 15 P3d 29 (2000), in accordance with the interpretive principles of *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993).

Again, ORS 527.670(6) provides that "[a]n operator, timber owner or landowner, before commencing an operation, shall notify the State Forester." The statute does not condition the requirement of submitting notification on an operator's, timber owner's, or landowner's knowledge that it is conducting an operation for which notice is required. Neither Thomas Creek nor Nel-Log explains, and we do not understand, how such a knowledge requirement may be read into the statute. *See* ORS 174.010 (in construing statutes, the court is "not to insert what has been omitted, or to omit what has been inserted").[3]

---

[3] We note that even the provision of the Forest Practices Act authorizing the imposition of criminal penalties on persons who violate enumerated provisions of the Forest Practices Act, including ORS 527.670, does so without requiring any particular culpable mental state. *See* ORS 527.990 ("violation of ORS 527.670 * * * is punishable, upon conviction, as a misdemeanor"); *see also* ORS 161.105(3) (where an offense defined by a statute outside the criminal code requires no culpable mental state, criminal negligence constitutes sufficient culpability); ORS 527.992 (providing that a person who "fails to comply" with ORS 527.670 or other enumerated provision of the Forest Practices Act, ORS 527.610 to 527.770, ORS 527.990(1), and ORS 527.992, may incur a civil penalty).

■ ■ Thomas Creek and Nel-Log also argue that ORS 527.670(6) requires only one entity to submit a notification of timber harvest operations. They argue that, in this case, that entity was Thomas Creek, on which Nel-Log had always relied for providing such notification. The argument, however, is not supported by the wording of the statute. As noted, ORS 527.670(6) requires notification by "[a]n operator, timber owner or landowner, before commencing an operation." There is, in other words, an unequivocal notice requirement. That notification requirement may be satisfied by any of three different entities: an operator, a timber owner, or a landowner. But at least one of them is obligated to supply the notice. If no one supplies the required notice, then the statute has been violated. Nel-Log insists that, in light of the fact that Thomas Creek in the past had provided the required notice, it was entitled to assume that it would do so with respect to the operation in Section 34. That theory also is unsupported by the wording of the statute. ORS 527.670(6) says nothing about an operator, a timber owner, or a landowner being entitled to rely on past practices to avoid what the statute plainly requires.

That reading of ORS 527.670(6) is consistent with this court's interpretation and application of it in *State v. Alder Creek Lumber Co., Inc.*, 33 Or App 195, 575 P2d 1020 (1978). In that case, an independent contractor commenced a timber harvest operation in Washington County. No notification was submitted before commencement of the operation. The landowner, who was also the timber owner, was convicted of violating the notification statute (codified at that time at ORS 527.670(2) (1977)). On appeal, the landowner argued that only the entity that actually commenced the operation was obligated to file the notification. This court disagreed, reasoning that, "[h]ad the legislature intended to require only the party who commences the operation to give the notice, the language imposing the responsibility upon the landowner and timber owner as well would be superfluous." *Id.* at 197.

In sum, substantial evidence supports the board's findings relating to Thomas Creek's and Nel-Log's failure to file a notification for a timber harvest operation in Section 34. In addition, as a matter of law, where neither Thomas Creek

nor Nel-Log submitted a notification for the operation in Section 34 as required under ORS 527.670(6), each failed to comply with that requirement and each was subject to the civil penalty for that violation. The board did not err in those regards.

B. *Second Assignment: Violation of OAR 629-605-0150(1)*

In their second assignment of error, Thomas Creek and Nel-Log argue that the board erred in concluding that they violated the 15-day waiting period established by OAR 629-605-0150(1). They argue that no waiting period was required because the operation in Section 34 was merely a continuation of their earlier operations for which they submitted proper notifications. Alternatively, they argue that they did not violate the waiting period requirement because the department's sole reason for not waiving the waiting period related to the classification of the stream, and the department later withdrew its citations based on the stream classification issue. They argue that, under those circumstances, Gisler lacked any valid reason not to waive the waiting period. They also argue that, when Gisler visited the site of the operation on January 27, 1999, and instructed workers not to cut any more timber within 100 feet of the stream, she, in effect, did waive the waiting period for the remainder of the operation. Finally, they argue that the failure to waive the waiting period was inconsistent with the department's "long-standing" and "established" practice, including the practice of adding new locations to previously submitted notifications.

The board responds that, as shown by the fact that the department issued no written waiver, it did not "actually" waive the waiting period and that Thomas Creek and Nel-Log do not argue that waiver must be implied as a matter of law. The board also argues that Gisler justifiably declined to waive the waiting period based on her concern that one of the streams involved was a Type D stream. According to the board, the intended function of the waiting-period rule is to permit such concerns to be addressed, and the fact that the concern ultimately proved to be unfounded is of no significance. The board argues that its findings relating to the waiting period issue are supported by substantial evidence and

that it correctly concluded that Thomas Creek and Nel-Log violated the waiting period rule.

In reply, Thomas Creek and Nel-Log again argue, as they did in their first assignment of error, that substantial evidence does not support the board's findings that the operation in fact occurred in Section 34. They also challenge the board's purported failure to consider that the department did not advise them of its refusal to grant a waiver of the 15-day waiting period until 12 days after they requested it, that is, from January 29 to February 9. In addition, they argue that moving the operation from Section 4 to Section 34 did not automatically require new notification. According to Thomas Creek and Nel-Log, under the applicable rules, no further notification is required when notification of an operation already has been provided and the new operation involves no changes to the information already submitted. Finally, they reply that they reported the change in information and submitted a new notification and request for waiver as soon as they discovered that they were operating in Section 34.

As discussed above, substantial evidence in the record supports the board's determination that the timber harvest operation took place in Section 34. We therefore turn to whether the board correctly concluded that Thomas Creek and Nel-Log violated OAR 629-605-0150. In construing an administrative rule, we apply the same analytical framework applicable to the construction of statutes, beginning with the rule's text and context. *PGE*, 317 Or at 612 n 4; *Alanis v. Barrett Business Services*, 179 Or App 79, 82, 39 P3d 880 (2002). Further, when an agency's interpretation of its own rule is plausible and not inconsistent with the wording of the rule itself, the rule's context, or any other source of law, we will defer to that interpretation. *Don't Waste Oregon Com. v. Energy Facility Siting*, 320 Or 132, 142, 881 P2d 119 (1994).

OAR 629-605-0150 provides, in part:

"(1) The operator, landowner or timber owner shall notify the State Forester as required by ORS 527.670(6), at least 15 days prior to commencement of an operation.

"(2) * * * [T]he State Forester may waive the 15 day waiting period required in section (1) of this rule. Such waivers may be granted when the State Forester has

already previewed the operation site or has otherwise determined the operation to have only minor potential for resource damage. Such waivers shall be made in writing, and on an individual notification basis.

"(3) Once an operation is actually commenced following proper notification of the State Forester, further notification under ORS 527.670(6) is not required for the following calendar years, provided:

"(a) There are no changes to the information required on the notification;

"(b) The operation actively continues within the first six months of the following calendar year; and

"(c) A valid permit to operate power driven machinery * * * is obtained prior to continuation of the operation in the new calendar year. Otherwise, the notification is valid only for the calendar year."

By its terms, the rule provides for a 15-day waiting period unless the State Forester, in his or her discretion, waives the waiting period in writing. Nothing in the rule makes compliance with the waiting period contingent on the validity of the State Forester's reason or reasons for waiving, or not waiving, the waiting period. Accordingly, the board correctly concluded that whether Gisler improperly reclassified the stream from a Type N to a Type D and whether the department eventually withdrew its separate citations that were based on Thomas Creek's and Nel-Log's failure to supply a written plan for an operation within 100 feet of a Type D stream were irrelevant to whether the department was authorized to cite Thomas Creek and Nel-Log for violating the 15-day waiting period requirement and to whether they had violated that requirement.

The argument that Gisler implicitly waived the 15-day waiting period by her conduct cannot be squared with the wording of the rule, which requires any waiver to be in writing. Likewise, the argument that the department's denial of the waiver request is vitiated by its failure to communicate the denial until 12 days later founders on the wording of the rule, which imposes no requirement that the department provide notice of its decision within a particular time period.

■ As for the argument that, under the applicable rules, Thomas Creek already had provided all the necessary information, OAR 629-605-0150(3)(a) provides that new notification is not required if, among other things, "[t]here are no changes to the information required on the notification." In this case, the operation in Section 34 failed to meet that condition. As described above, Walker's notifications submitted in November and December 1998 stated that those operations were to take place in Section 4. In contrast, the new operation that commenced in January of 1999 took place in Section 34. Under ORS 527.670(6), the notification of an operation must include "the legal description of the operating area." Because moving the operation from Section 4 to Section 34 involved a change from the location described in the notification, notification was required under OAR 629-605-0150(1).

■ There remains the argument that we must remand the board's final order on the ground that the department's decision not to grant a waiver was inconsistent with prior department practice and was not adequately explained. Under ORS 183.482(8)(b)(B), an agency order shall be remanded if the agency's exercise of discretion was "[i]nconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency." *See, e.g., Fister v. South Hills Health Care*, 149 Or App 214, 218-19, 942 P2d 833 (1997), *rev den*, 326 Or 389 (1998) (where the agency's own precedents established that it would consider only those issues raised by the parties before the hearing officer and where the agency did not set forth an adequate reason for deviating from that well-established practice, the agency erred in considering an argument not made before the hearing officer).

In this case, even assuming that the department typically granted waivers of the 15-day waiting period, it adequately explained the reason for its different action: that it was concerned about the possible existence of a Type D stream. Again, the ultimate validity of that basis for the department's decision not to waive the waiting period does not vitiate its discretion in that regard.

In summary, substantial evidence in the record supports the relevant findings of the board. Further, as a matter of law, neither the applicable rule nor prior department practice excused Thomas Creek and Nel-Log from compliance with the waiting period rule. The board correctly concluded that Thomas Creek and Nel-Log violated OAR 629-605-0150(1).

## C. *Third Assignment: Award of Attorney Fees*

In their third assignment of error, Thomas Creek and Nel-Log argue that the board erred in declining to award them attorney fees and expenses. They argue that they are entitled to an award of fees and expenses under ORS 527.700(7) because the department issued, without probable cause, citations for conducting operations near a Type D stream without a written plan. According to Thomas Creek and Nel-Log, the stream was not, in fact, a Type D stream—as the department later acknowledged—and the department should have known that at the time it issued the citations. Indeed, they argue, at the time a written plan supposedly was required, the stream indisputably was classified Type N, which did not require a written plan.

The board responds in part that ORS 527.700(7) does not apply in this case. According to the board, that statute authorizes an award of attorney fees only in a proceeding arising out of a challenge to a written plan required under ORS 527.670(3). In contrast, the board argues, this is a civil penalty proceeding governed by a different set of statutes, ORS 527.683 to 527.687, which do not provide for an award of attorney fees against the department or the State Forester. Alternatively, the board argues that, even if ORS 527.700(7) applies to these proceedings, attorney fees are not available against the department because the department is not a "party" to the proceedings within the meaning of that statute. Finally, the board argues that, even assuming that it was authorized to award attorney fees in these proceedings, it acted within its discretion in declining to do so, because the department had probable cause to proceed with the citations involving the stream classification issue. According to the board, issuance of the citations properly provided the department with an opportunity to resolve the legal and factual

questions surrounding that issue, and the department promptly withdrew the citations when those questions were resolved.

We need not determine whether the board is correct in asserting that ORS 527.700(7) does not apply to civil penalty proceedings because, even if it does, the department is not a "party" against whom the board may award attorney fees and expenses under that statute. This presents another matter of statutory construction involving an inexact term, which is governed by the interpretive principles of *PGE*, 317 Or at 610-12.

ORS 527.700 provides, in part:

"(1) Any operator, timber owner or landowner affected by any finding or order of the State Forester issued under ORS 527.610 to 527.770 and 527.992 may request a hearing within 30 days after issuance of the order. The hearing shall be commenced within 14 days after receipt of the request for hearing and a final order shall be issued within 28 days of the request for the hearing unless all parties agree to an extension of the time limit.

"(2) The State Board of Forestry may delegate to the hearing officer the authority to issue final orders on matters under this section. Hearings provided under this section shall be conducted as contested case hearings under ORS 183.413 to 183.470. The board may establish such rules as it deems appropriate to carry out the provisions of this section. Appeals from final hearing orders under this section shall be as provided in ORS 183.482.

"(3) Any person adversely affected or aggrieved by an operation described in subsection (4) of this section may file a written request to the board for a hearing if the person submitted written comments pertaining to the operation within the time limits established under ORS 527.670(9).

"(4) A request for hearing may be filed under subsection (3) of this section only if a written plan was required pursuant to ORS 527.670(3).

"(5) A request for hearing filed under subsection (3) of this section shall be filed within 14 calendar days of the date the written plan was approved. Copies of the complete request shall be served, within the 14-day period, on the

operator, timber owner and landowner. The request shall include:

"(a) A copy of the written plan on which the person is requesting a hearing;

"(b) A copy of the comments pertaining to the operation that were filed by the person requesting the hearing;

"(c) A statement that shows the person is adversely affected or aggrieved by the operation and has an interest which is addressed by the Oregon Forest Practices Act or rules adopted thereunder; and

"(d) A statement of facts that establishes that the operation is of the type described in ORS 527.670(3).

"(6) If the board finds that the person making the request meets the requirement of subsection (5)(c) of this section, the board shall set the matter for hearing within 14 calendar days after receipt of the request for hearing. The operator, timber owner and landowner shall be allowable parties to the hearing. The person requesting the hearing may raise, in the hearing, only those issues that the person raised in written comments filed under ORS 527.670(9) relating to conformity with the rules of the board. A final order shall be issued rescinding, affirming or modifying the written plan within 28 days after the request for hearing was filed, unless all parties agree to an extension of the time limit.

"(7) The board may award reasonable attorney fees and expenses to each of the prevailing parties against any other party who the board finds presented a position without probable cause to believe the position was well-founded, or made a request primarily for a purpose other than to secure appropriate action by the board.

"(8)(a) Upon the written request of a person requesting a hearing under subsection (3) of this section, a stay of the operation subject to the hearing may be granted * * *.

"* * * * *

"(c) If the board affirms the written plan pertaining to the operation for which the stay was granted, the board shall award reasonable attorney fees and actual damages in favor of each of the prevailing parties, to the extent incurred by each, against the person requesting the stay.

"(9) If the board disapproves or changes the written plan as submitted and approved by the State Forester pertaining to any operation, the board shall award reasonable attorney fees and costs against the state in favor of each of the prevailing parties.

"(10) As used in this section, 'person' means any individual, partnership, corporation, association, governmental subdivision or public or private organization of any character."

Thus, under subsection (1), any operator, timber owner, or landowner who is affected by, among other things, an order issued under ORS 527.992, may request a hearing. Orders issued under ORS 527.992 are civil penalties. Then, under subsection (7)—assuming for the sake of argument that it applies—after the hearing, the board is authorized to award attorney fees against a party who either presented a position without probable cause "or made a request primarily for a purpose other than to secure appropriate action by the board." In context, the "request" appears to be a request for a hearing. The only "parties" who can request a hearing under ORS 527.700 are operators, timber owners, landowners, and persons who have submitted comments pertaining to an operation requiring a written plan. ORS 527.700(1), (3). Thus, it is apparent that the legislature did not contemplate that the reference to "parties" in subsection (7) includes the department.

Other provisions of ORS 527.700 buttress that conclusion. Subsection (9), for example, expressly refers to an award of attorney fees and costs against "the state" if the board disapproves or changes a written plan submitted by the State Forester. Two aspects of that subsection are illuminating. First, it demonstrates that, when the legislature wants to include a provision for an award of attorney fees against a state agency, it knows how to do so. Second, it reflects the use of the term "parties" to refer only to persons other than the department, which the subsection refers to as "the state."

Other contextual provisions similarly confirm that the department is not a "party" within the meaning of ORS 527.700(7). The statute provides that a hearing requested

under subsection (1) is to be conducted as a contested case under the Administrative Procedures Act (APA). ORS 527.700(2). The APA, in turn, defines the term "party" as one who is "entitled as of right to a hearing before the agency." ORS 183.310(6). The statute provides that other state agencies may appear before "the agency," but the APA does not define a "party" as the agency before which the hearing is held. *Id.*

Thomas Creek and Nel-Log insist that the department must be considered a party, because it presented evidence at the hearing just as any party would. But, as we have noted, merely because an entity presents evidence does not necessarily mean that the entity is a "party." We conclude that the board did not err in declining to award attorney fees and expenses.

D. *Fourth Assignment: Validity of the Department's "Exceptions"*

In their fourth assignment of error, Thomas Creek and Nel-Log argue that the board erred in modifying the hearing officer's proposed final order in response to the department's "exceptions." They argue that, under *former* OAR 629-670-0330(3),[4] only a party on whom a civil penalty has been imposed may submit exceptions to a hearing officer's proposed final order. In any event, they argue, under *former* OAR 629-670-0330(3)(a), exceptions to a proposed final order must be limited to erroneous findings of fact, erroneous legal conclusions, or prejudicial error. According to Thomas Creek and Nel-Log, none of the department's exceptions falls within any of those three permissible grounds for exception.

The board argues that the assignment was not preserved. In the alternative, it argues that, among other things, the applicable rules expressly provide that the department may submit a modified proposed final order. That, the board argues, is all that the department did in this case, and the fact that its modified proposed final order was accompanied

---

[4] On July 1, 2002, the board repealed the rule and replaced it with OAR 629-001-0025, OAR 629-001-0040, and OAR 629-001-0045.

by a detailed explanation denominated "exceptions" is of no practical or legal significance.

■ ■ At the outset, we note that Thomas Creek's and Nel-Log's argument that the department may not submit exceptions was not preserved. ORAP 5.45(1) provides that "[n]o matter claimed as error will be considered on appeal unless the claimed error was preserved in the lower court." Moreover, ORAP 5.45(4)(c) provides that "[t]he court may decline to consider any assignment of error that requires the court to search the record to find the error or to determine if the error properly was raised and preserved." Those preservation requirements apply not only to appeals of trial court judgments but also to petitions for judicial review of agency action. *Kniss v. PERB*, 184 Or App 47, 51, 55 P3d 526 (2002); *Veselik v. SAIF*, 177 Or App 280, 288, 33 P3d 1007 (2001), *rev den*, 334 Or 121 (2002).

In this case, Thomas Creek's and Nel-Log's brief does not explain whether the arguments now advanced on review were submitted to the board. Although we are not required to do so, we have examined the record to determine whether the arguments were, in fact, submitted to the board. It appears that, in response to the department's modified proposed final order and exceptions, Thomas Creek and Nel-Log submitted written argument, which includes only the assertion that the exceptions do not fall within those permitted by *former* OAR 629-670-0330(3)(a). That is the only contention that was preserved and the only one that we will address.

As we have noted, we will defer to an agency's construction of its own rule if it is plausible and not inconsistent with the wording of the rule, the rule's context, or any other source of law. *Don't Waste Oregon Com.*, 320 Or at 142.

*Former* OAR 629-670-0330 provided, in part:

"(1) The State Forester or hearings officer shall draft, file with the board, and serve on all parties, a proposed order, including rulings on the admissibility of offered evidence if the rulings are not set forth in the record, recommended findings of fact, conclusions of law, and recommendation for disposition of the case.

"(2) If the State Forester modifies the hearing officer's draft proposed order, all parties to the hearing must be notified of the changes.

"(3) Not later than ten days after the date of the filing of the proposed order with the Board, the person on whom the civil penalty has been imposed may file with the Board, and serve on the department and the hearing officer, the person's written exceptions to the proposed order:

"(a) The exceptions shall be confined to factual and legal issues which are essential to the ultimate and just determination of the proceeding, and shall be based only on grounds that:

"(A) A necessary finding of fact is omitted, erroneous, or unsupported by the preponderance of the evidence on the record;

"(B) A necessary legal conclusion is omitted or is contrary to law or the Board's policy; or

"(C) Prejudicial procedural error occurred.

"(b) The exceptions shall be numbered and shall specify the disputed finding, opinions or conclusions. The nature of the suggested error shall be specified and the alternative or corrective language provided."

In this case, the department's exceptions were that the hearing officer's proposed final order omitted necessary findings of fact, included erroneous or unnecessary findings of fact, erroneously concluded that Nel-Log had not violated ORS 527.670(6) in failing to provide notification of its operations, erroneously concluded that both Thomas Creek and Nel-Log had not violated *former* OAR 629-605-0150(1) in failing to observe the required 15-day waiting period, and erroneously awarded Thomas Creek and Nel-Log attorney fees and expenses. Thomas Creek and Nel-Log do not explain, and we do not understand, why those exceptions exceed the scope of those permitted under the rule. They certainly do not explain why the board's conclusion that the exceptions were permissible is not at least plausibly consistent with the rule. *See Don't Waste Oregon Com.*, 320 Or at 142. We reject the assignment without further discussion.

### E. *Fifth Assignment: Failure to Explain Rejection of Hearing Officer's Proposed Final Orders*

Finally, in their fifth assignment of error, Thomas Creek and Nel-Log argue that the board violated *former* OAR 629-670-0330(4)(c) by failing to state its reasons for rejecting the hearing officer's proposed orders. The board responds that the rule requires only that, if the board rejects the hearing officer's proposed order, it furnish an order that contains findings of fact and conclusions of law; according to the board, its orders contained "detailed" findings and conclusions and therefore were adequate to meet that standard. In reply, Thomas Creek and Nel-Log advance an additional basis for their contention that the board failed adequately to explain its final orders. According to Thomas Creek and Nel-Log, under Oregon Laws 1999, chapter 849, section 12(2), *compiled as a note after* ORS 183.470, the board is obligated to "identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications." The board responds that a reply brief is no place to raise such a new claim of error.

We begin with the argument that Thomas Creek and Nel-Log, in effect, have not preserved their contention that the 1999 statute requires the board to explain any modification of a hearing officer's proposed final orders. At the outset, we observe that the first appearance of the statute in Thomas Creek's and Nel-Log's reply brief is perilously close to the sort of "sandbagging" that the court generally refuses to countenance. *See, e.g., Stanich v. Precision Body and Paint, Inc.*, 151 Or App 446, 456, 950 P2d 328 (1997) (new claim in reply brief will not be considered), particularly when no justification is offered for the tardy citation. Having said that, we also must acknowledge that the rules of preservation have become somewhat more "lax" when a case turns on the applicability and construction of a statute. *See State v. Smith*, 184 Or App 118, 121-23, 55 P3d 553 (2002). Indeed, it is arguable that, under the malleable principles of preservation articulated in *State v. Hitz*, 307 Or 183, 188, 766 P2d 373 (1988), the citation of a new statute in support of an assignment of error is merely the addition of an additional "source" in support of an "issue" that has been preserved. We conclude that

the reliance on the 1999 statute was adequately preserved and proceed to the merits of the parties' disputes.

 We begin with *former* OAR 629-670-0330(4), which provides:

> "After the Board has received and reviewed the proposed order and the exceptions, if any, the Board shall:

> "(a) Entertain such oral argument as the Board determines necessary or appropriate to assist the Board in the proper disposition of the case;

> "(b) Remand the matter to the State Forester or hearing officer for further proceedings on any issues of fact which the Board believes were not fully or adequately developed; or

> "(c) Enter a final order adopting the recommendation of the State Forester or hearing officer as the Board's order or rejecting the recommendation of the State Forester or hearing officer. If the Board elects to reject the recommendation of the State Forester or hearing officer, the Board's final order shall contain necessary findings of fact and conclusions of law."

Once again, we review the board's interpretation of that rule in accordance with the deferential principles of *Don't Waste Oregon Com.*, 320 Or at 142. In that regard, we note that the rule requires only that the board's final orders contain "necessary findings of fact and conclusions of law." There is no question that the board's final orders contained extensive and detailed findings of fact and conclusions of law. Nothing in the wording of the rule or its context suggests that more is required. Certainly nothing in the rule or its context renders the board's construction wholly implausible. We reject Thomas Creek's and Nel-Log's argument that the rule requires an explanation of why the board rejected portions of the hearing officer's proposed final orders.

 We turn, finally, to Thomas Creek's and Nel-Log's argument based on Oregon Laws 1999, chapter 849, section 12(2), and OAR 137-003-0665(3). Section 12(2) was adopted as part of the Hearing Officer Panel Pilot Project, which establishes a hearing officer panel within the Employment Department and requires specified state agencies to employ

hearing officers from the panel to conduct hearings in contested case proceedings. Or Laws 1999, ch 849, §§ 2, 3, 9. Under section 12(1) of that act, a hearing officer who conducts a contested case hearing on behalf of an agency prepares and serves on "the agency and all parties to the hearing" a proposed order, including recommended findings of fact and conclusions of law. Section 12(2) provides:

> "If the hearing officer assigned from the panel will not enter the final order in a contested case proceeding, and the agency modifies the form of order issued by the hearing officer in any substantial manner, the agency must identify the modifications and provide an explanation to the parties to the hearing as to why the agency made the modifications."

In this case, the department submitted modified proposed final orders that detailed the department's proposed modifications in legislative format, showing proposed deletions from and additions to the text of the hearing officer's proposed final orders. The proposed additional findings and conclusions themselves detail the bases for the proposed ultimate decisions as to each disputed issue. Moreover, the department accompanied the modified proposed final orders with an explanation of each of the proposed changes. The board adopted the department's proposed modifications *in toto*. Then, in the final orders on reconsideration, the board further detailed the reasons for its decision not to award attorney fees, more specifically addressing the reasons for rejecting the hearing officer's proposed final order.

Neither Thomas Creek nor Nel-Log explains what additional information they believe the board was obligated to provide or why they conclude that the detailed explanations contained in the final orders are deficient. Apparently, they contend that the board's final orders are deficient because they fail to contain a section specifically denominated "explanation for modifying the hearing officer's proposed orders." We find no such requirement in the statute. The reasons for the board's decision—including its modification of the hearing officer's proposed final orders—are fairly described in the detailed findings and conclusions. That is sufficient to satisfy the procedural requirement imposed by section 12(2) of the statute.

Affirmed.