Submitted on record and briefs January 6, affirmed July 12, 2006

Mildred A. FRASER,
Liam O'Callaghan and Jean Pekarek,
*Petitioners,*

*v.*

LAND CONSERVATION AND
DEVELOPMENT COMMISSION,
*Respondent.*

04-WKTASK-001622; A124842

138 P3d 932

Corinne C. Sherton filed the brief for petitioner Jean Pekarek. Petitioners Mildred A. Fraser and Liam O'Callaghan filed the brief *pro se.*

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Denise G. Fjordbeck, Assistant Attorney General, filed the brief for respondent.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

ARMSTRONG, J.

## ARMSTRONG, J.

Petitioners seek review of an order of the Land Conservation and Development Commission (LCDC) that affirmed a decision by the Department of Land Conservation and Development (DLCD) approving Wallowa County's performance of a periodic review work task. We reject all of petitioners' assignments of error without discussion, except for petitioner Pekarek's assertion that LCDC improperly considered untimely evidence from the county without allowing her a chance to review and respond to it. We reject that argument for the following reasons and affirm.

This petition for judicial review concerns one of Oregon's unique natural treasures—the moraines of Wallowa Lake.[1] The moraines are, as described by the county in Appendix 5-8 to its comprehensive plan, "an example of a nearly perfect glacial moraine development - one which would surely rival any such found in the entire world."

Oregon Statewide Planning Goal 5 seeks "[t]o protect natural resources and conserve scenic and historic area and open spaces." The moraines are rich with resources significant under Goal 5. For that reason, the county gives them special protection in its comprehensive plan.

Work Task 13 in the county's periodic review of its comprehensive plan required the county to refine the Moraine Resources Overlay.[2] Wallowa County completed

---

[1] A moraine is "an accumulation of earth and stones carried and finally deposited by a glacier." *Webster's Third New Int'l Dictionary* 1468 (unabridged ed 2002).

[2] Specifically, the work task provides:

"Consistent with Statewide Planning Goal 5, revise the [environmental, social, economic, and energy impact] analysis [(ESEE)] in the comprehensive plan to: (1) address any new conflicting uses allowed in the underlying zone(s) that are not identified in the existing ESEE (*e.g.*, template dwellings, lots of record); and (2) show that a Goal 5 program of 'visual subordination' provides equal or a greater level of protection than is currently provided under the adopted (but remanded) 'suitable visual buffer' program.

"Adopt a revised Goal 5 protection program consistent with the revised ESEE analysis, including revising Article 28 of the zoning ordinance to address [issues] raised by LUBA on Remand (LUBA No. 96-240), including consideration of changes to subjective language regarding excavation (2 ft. cut & fill), definition of 'crest' of the moraines (100 yd. Setback), definition of 'suitable

Work Task 13 and submitted it to DLCD in April 2002. Petitioners objected to the county's submission, but DLCD approved it in 2003. Petitioners appealed that decision to LCDC.

One of petitioner Pekarek's complaints about the county's performance of Work Task 13 concerns the county's decision to treat a ski run corridor near the Wallowa Lake Tramway as an existing use. On March 1, 2004, in response to the DLCD Director's report that recommended to LCDC that it affirm the county's submission, Pekarek filed an exception that challenged the existence of the ski run corridor. On March 3, 2004, Wallowa County Deputy Planner Black submitted a memorandum to LCDC that described news reports from the 1970s about the opening of a ski run on Mount Howard near the tramway. Attached to the memorandum was a topographical map purporting to show the location of the ski run. On judicial review, Pekarek asserts that LCDC erred in considering the Black memorandum because the county had not timely submitted the memorandum and LCDC had not given her an opportunity to review and respond to it.

■■ We conclude that we cannot review the propriety of LCDC's consideration of the Black memorandum because Pekarek did not preserve that issue below. The preservation requirements of ORAP 5.45 "apply not only to appeals of trial court judgments but also to petitions for judicial review of agency action." *Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003).

Pekarek's briefs on review to us do not identify anything in the record that shows that she raised an objection before LCDC to its consideration of the Black memorandum. Although we are not required to do so under ORAP 5.45(4)(c), we have searched the record to determine whether Pekarek preserved her argument about the Black memorandum. Nothing in the record indicates that she objected in writing to consideration of the Black memorandum, and all that she said about the memorandum at the LCDC hearing was that

visual buffer' to screen development, an appropriate residential density, and additional measures to ensure that interruption of the skyline does not occur."

she had not seen it and did not "know what the county is talking about." She did not seek to strike the memorandum, request additional time to review and respond to it, or otherwise object to its consideration. In short, Pekarek did not raise before LCDC the issue that she raises here and, hence, did not preserve it.

Affirmed.