Argued and submitted April 11, reversed in part; otherwise affirmed
November 22, 2000

# ENVIRONMENTAL QUALITY COMMISSION,
## *Respondent,*

*v.*

# CITY OF COOS BAY,
## *Petitioner.*

## (WQMW-WR-96-277; CA A107070)

14 P3d 649

C. Randall Tosh argued the cause for petitioner. With him on the brief was Ormsbee, Corrigall, McClintock & Tosh, LLP.

David F. Coursen, Assistant Attorney General, argued the cause for respondent. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds, Solicitor General.

Before Landau, Presiding Judge, and Linder and Brewer, Judges.

LANDAU, P. J.

### LANDAU, P. J.

The City of Coos Bay (City) seeks review of an order of the Environmental Quality Commission (EQC) that, among other things, imposed civil penalties for discharging sewage sludge without a permit in violation of ORS 468B.050(1)(a). The City argues that the EQC erred in imposing those penalties. We agree and reverse that portion of the order.

The relevant facts are undisputed. The City operates a sewage disposal system, part of which includes a treatment plant, which partially treats sewage and then pumps it through a pressure pipeline to a sludge lagoon for further treatment. The City has been granted a National Pollution Discharge Elimination System (NPDES) permit to operate the sewage disposal system. The permit specifies effluent limitations for waste discharged from the system.

In September 1996, the pipe between the treatment plant and the sludge lagoon ruptured and spilled between 2,000 and 5,000 gallons of partially treated sewage sludge into the nearby tidal wetlands.

The Department of Environmental Quality (DEQ) cited the City for three violations. First, it cited the City for violating ORS 468B.050(1)(a), which, subject to exceptions not pertinent to this case, provides:

> "[W]ithout first obtaining a permit from the Director of the Department of Environmental Quality, which permit shall specify applicable effluent limitations, no person shall:
>
> "(a)   Discharge any wastes into the waters of the state from any industrial or commercial establishment or activity or any disposal system."

Second, DEQ cited the City for violating ORS 468B.025(1)(b), which provides that no person may:

> "Discharge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission."

Finally, DEQ cited the City for violating ORS 468B.025(2), which provides:

"No person shall violate the conditions of any waste discharge permit issued under ORS 468B.050."

The hearings officer concluded that the City did not commit the first violation, as a matter of law, because ORS 468B.050(1) only prohibits discharging waste from a sewage disposal system "without first obtaining a permit," and the City had obtained an NPDES permit. The hearings officer also concluded, however, that, in exceeding the conditions of that permit, the City did commit the other two violations. For those two violations, the hearings officer fined the City $1,500. DEQ requested a hearing before the EQC, challenging the hearings officer's conclusion that the City did not violate ORS 468B.050(1). DEQ argued that the statute prohibits any discharge that is not specifically allowed in the permit. The EQC agreed and imposed an additional civil penalty of $3,900.

On review, the City argues that the EQC erred as a matter of law in reversing the hearings officer and concluding that the City violated ORS 468B.050(1). According to the City, the statute does not apply because it prohibits only discharges from a sewage disposal system without a permit, and the City had obtained an NPDES permit for its sewage disposal system. The City argues that violations of the terms of that permit are separately covered by ORS 468B.025, which it agrees it did violate. The EQC argues that any discharge in violation of the conditions of a permit is an "unpermitted" discharge; in other words, any discharge in violation of a permit is a discharge "without first obtaining a permit."

██ We begin with ORS 468B.050(1)(a). It specifies that, "without first obtaining a permit," no person may discharge "any wastes into the waters of the state from any industrial or commercial establishment or activity or any disposal system." Its focus is on when a permit is required: One is required before any waste may be discharged from covered facilities. The statute says nothing about violations of the specific terms and conditions of a permit. In particular, it does not prohibit discharges in violation of particular permit

conditions. It says only that before *any* discharge from a sewage disposal system occurs, the operator of the system must obtain a permit.

■ In significant contrast, ORS 468B.025(2) does prohibit violating the terms and conditions of a permit. Indeed, it specifically refers to violations of permits issued under ORS 468B.050:

> "No person shall violate the conditions of any waste discharge permit issued under ORS 468B.050."

ORS 468B.025(2). It is thus apparent that the legislature intended that the two statutes work together: ORS 468B.050(1)(a) specifies when it is necessary to obtain a permit, while ORS 468B.025(2) concerns violations of the conditions contained in the permit.

■ In that light, it is clear that the EQC's reading of the two statutes is untenable. The EQC contends that any discharge in violation of the conditions of a permit amounts to discharging without a permit in violation of ORS 468B.050(1)(a). The problem is that, if the legislature wished ORS 468B.050(1)(a) to apply to violations of permit conditions, it could have said so. It certainly knows how to do that, as evinced by the wording of ORS 468B.025(2), which plainly prohibits "violat[ing] the conditions of any waste discharge permit issued under ORS 468B.050." Indeed, the EQC's reading of the two statutes would render the second redundant of the first. According to the EQC, ORS 468B.050(1)(a) prohibits violating the conditions of a discharge permit. But ORS 468B.025(2) already says precisely that. Thus, under the EQC's construction, ORS 468.025(2) is meaningless. We are required, if possible, to avoid construing statutes in a way that renders any provision meaningless. ORS 174.010; *Phelps and Nelson*, 122 Or App 410, 415, 857 P2d 900 (1993), *rev den* 318 Or 326 (1994).

The EQC insists that its reading of the statutes does not necessarily make either redundant. It contends that ORS 468B.025 prohibits only discharges that actually cause a violation of water quality standards, while ORS 468B.050(1)(a) targets specific activities and prohibits discharges in violation of permits to conduct those activities whether or not they

cause violations of water quality standards. Accordingly, the EQC argues, "[i]f a discharge from a facility requiring a permit did not violate water quality standards, it would violate only the permit requirement in ORS 468B.050," and the two statutes are thus not redundant.

In so arguing, however, the EQC ignores the text of ORS 468B.025. The statute reads, in part:

"Except as provided in ORS 468B.050 * * * no person shall:

"(a) Cause pollution of any waters of the state or place or cause to be placed any wastes in a location where such wastes are likely to escape or be carried into the waters of the state by any means.

"(b) Discharge any wastes into the waters of the state if the discharge reduces the quality of such waters below the water quality standards established by rule for such waters by the Environmental Quality Commission.

"(2) No person shall violate the conditions of any waste discharge permit issued under ORS 468B.050."

Clearly, *one subsection* of ORS 468B.025 does prohibit discharges that violate water quality standards. But that is not all that the statute says. It also includes two other subsections, neither of which requires the violation of water quality standards. In particular, as we have noted, subsection (2) prohibits the violation of a permit condition, regardless of whether water quality standards are implicated. Thus, the EQC's argument does nothing to avoid the redundancy created by its construction of ORS 468B.050(1)(a).

The EQC erred in concluding that the City violated ORS 468B.050(1)(a).

Portion of final order determining violation of ORS 468B.050(1)(a) and imposing penalties for that violation reversed; otherwise affirmed.