Submitted on record and briefs November 5, 2004, affirmed July 6, 2005

JOSE L. GUZMAN,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A119658

115 P3d 983

Jose L. Guzman filed the briefs *pro se.*

Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General, and Judy C. Lucas, Assistant Attorney General, filed the brief for respondent.

Before Edmonds, Presiding Judge, and Wollheim and Schuman, Judges.

EDMONDS, P. J.

## EDMONDS, P. J.

Petitioner seeks review of an order of a Board of Parole and Post-Prison Supervision (board) finding that he remains a danger and deferring establishment of a parole release date under ORS 144.228. We affirm.

In July 1988, after his conviction for burglary in the first degree, ORS 164.225, and sodomy in the first degree, ORS 163.405, petitioner was sentenced as a dangerous offender.[1] ORS 161.725 (1987), *amended by* Or Laws 1989, ch 790, § 75 and Or Laws 1993, ch 334, § 5.[2] In June 1989, the board set his parole consideration hearing for March 6, 1998. ORS 144.228(1) (1987), *amended by* Or Laws 1991, ch 318, § 2 and Or Laws 1993, ch 334, § 3;[3] *former* OAR 255-38-005(1) (1985).[4] In April 1998, the board found that petitioner

---

[1] Petitioner was sentenced to 30 years with a 15-year minimum for the burglary conviction and to a consecutive 30-year term with a 15-year minimum for the sodomy conviction. He committed the offenses while on parole for previous convictions for burglary and sexual abuse in the first degree.

[2] Under ORS 161.725(1) (1987), a defendant could be sentenced as a dangerous offender if the court found that

"[t]he defendant is being sentenced for a Class A felony, and the court finds that the defendant is suffering from a *severe personality disorder indicating a propensity toward criminal activity*."

(Emphasis added.)

[3] ORS 144.228(1)(b) (1987) provided, in part,

"At the parole consideration hearing, the prisoner shall be given a release date in accordance with the applicable range and variation permitted if the condition which made the prisoner dangerous is absent or in remission. *In the event that the dangerous condition is found to be present, reviews will be conducted at least once every two years until the condition is absent or in remission,* at which time the release on parole shall be ordered if the prisoner is otherwise eligible under the rules."

(Emphasis added.)

[4] *Former* OAR 255-38-005(1) (1985) provided:

"Notwithstanding the provisions of Division 60, the Board shall not set a parole release date for a person sentenced under ORS 161.725 and 161.735 as a dangerous offender. The Board shall within six (6) months after commitment to the custody of the Corrections Division set a parole consideration hearing date instead of a release date as otherwise required by Division 60. The parole consideration hearing date shall be at the earliest time the prisoner would be eligible for release. If the condition (*e.g., psychiatric or psychological diagnosis of a present severe emotional disturbance, such as severe personality disorder indicating a propensity toward criminal activity*) is still present, reviews will be scheduled at least every two (2) years thereafter. *If at the parole consideration hearing or a subsequent review the condition is determined to be absent or*

remained dangerous and deferred his parole consideration date to March 3, 2000, with a review in January 2000. In January 2000, the board again deferred setting a parole release date. *See former* OAR 255-38-005(1), (3) (1985).[5] At that hearing, petitioner's parole consideration date was adjusted by approximately three months to reflect that the Department of Corrections had decertified 105 days of petitioner's credit for time served. The board deferred petitioner's parole consideration date until May 22, 2002, which was approximately 28 months from his previous parole consideration hearing.

At the May 22, 2002, hearing, the board considered all evidence regarding petitioner, including two psychological reports. The first psychological report was prepared by Dr. Stuckey on February 26, 2002. The second report was prepared by Dr. Colistro on April 17, 2002. The reports contain information pertaining to petitioner's history of voyeurism and other prior diagnoses, as well as an assessment of his then-current psychological condition. At the hearing, petitioner introduced a relapse prevention plan and evidence demonstrating his lack of significant prison disciplinary problems and his completion of significant mental health treatment in the prison.

According to Stuckey's report, petitioner's diagnoses of voyeurism, paraphilia, and polysubstance dependence appeared to be in remission as a result of his incarceration. Stuckey also determined that petitioner's diagnosis of mixed

*in remission,* the Board shall set a release date or order parole if the prisoner is otherwise eligible under the rules.

(Emphasis added; underscoring in original.) The rule has been amended and renumbered as OAR 255-036-0005.

[5] *Former* OAR 255-38-005(3) (1985) provided:

"At any hearing or review, the Board shall consider the report of the executive officer of the facility in which the prisoner is confined regarding the prisoner's conduct, attitude, and work record as defined in ORS 144.228(2) and a psychiatric or psychological report received within two (2) months of the hearing:

"(a) The Board shall not set a parole release date unless the psychiatric or psychological report reveals that the severe emotional disturbance which has made the prisoner dangerous is no longer present;

"(b) If the disturbance is present, the Board may defer release to a specified future time * * *."

personality disorder with antisocial and passive-aggressive features was in partial remission. Stuckey concluded that, if petitioner "follows through on his comprehensive relapse prevention plan and parole release plan, there is a moderate chance of him succeeding in the community." However, he also indicated that petitioner's "profile is cause for concern and could indicate that [he] might have difficulties following through on his parole plan and responding to parole supervision."

Colistro concluded that petitioner was not mentally or emotionally disturbed, that his polysubstance dependance/abuse was in remission, and that his personality disorder with antisocial and passive-aggressive features was in partial remission. He opined that "[t]he likelihood of [petitioner] reoffending ought to be minimal *as long as he actively participates in treatment, stays substance abuse-free, and abides by this plan.*" (Emphasis added.)

Nonetheless, in its May 22, 2002, order, the board concluded:

> "THE BOARD, APPLYING THE RULES IN EFFECT AT THE TIME OF THE COMMITMENT OFFENSE(S), FINDS THE OFFENDER HAS A MENTAL OR EMOTIONAL DISTURBANCE, DEFICIENCY, CONDITION, OR DISORDER PREDISPOSING OFFENDER TO THE COMMISSION OF ANY CRIME TO A DEGREE RENDERING [HIM] A DANGER TO THE HEALTH OR SAFETY OF OTHERS; THEREFORE, THE CONDITION WHICH MADE [PETITIONER] DANGEROUS IS NOT IN REMISSION AND [HE] DOES CONTINUE TO REMAIN A DANGER. THE BOARD WOULD REACH THE SAME RESULT UNDER THE CURRENT RULES."

(Uppercase in original.) Petitioner requested administrative review of that order, and, on September 10, 2002, the board issued an administrative review response denying relief.[6] Petitioner seeks judicial review.

---

[6] In its response, the board concluded that

"[t]here is sufficient evidence in the record by a preponderance of the evidence to support the board's finding. Dr. Stuckey diagnosed you as having a Mixed Personality Disorder with Antisocial and Passive-Aggressive Features. He went on further to say that the disorder appeared to be in partial remission. Dr. Colistro diagnosed you as having a Personality Disorder with Antisocial and Passive Aggressive Features under Axis II. Dr. Colistro also found this condition to be in partial remission. Dr. Colistro concludes that the likelihood

■      On review, petitioner makes several assignments of error. We write only to address petitioner's arguments that the board's order was not supported by substantial evidence and that the board's order must be reversed because the parole consideration hearing was not held in a timely manner. We reject the remaining assignments of error without discussion.

Petitioner contends that the board's order "is not supported by sufficient evidence in the record."⁷ ORS 144.226; ORS 144.228. We review the board's order for substantial evidence and errors of law. ORS 183.482(8)(a), (c). "Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make that finding." ORS 183.482(8)(c).

Under ORS 144.228(1)(b), "if the board finds that the prisoner is no longer dangerous or finds that the prisoner remains dangerous but can be adequately controlled with supervision and mental health treatment and that the necessary resources for supervision and treatment are available," the prisoner "shall be given" a parole release date or released on parole. ORS 144.228(2) directs that "the board shall cause to be brought before it and consider all information" regarding the prisoner. That information must include, according to the statute, the written report of the examining psychiatrist or psychologist and a written report to be made by the executive officer of the Department of Corrections institution in which the prisoner has been confined. The

---

of your reoffending would be minimal as long as you actively participate in treatment and stay substance abuse free. Dr. Stuckey concluded that your psychological profile raises serious concern that your persona might be manipulatory and that basic characterological changes have not been affected. Despite the finding that the diagnoses were in partial remission, the board determined that there was sufficient evidence in the record by a preponderance of the evidence to make its finding * * *. The board determined that the portion of the diagnoses that were not in remission caused you to be a danger if released to the community at this time."

⁷ Although, in its May 22, 2002, order, the board applied the rules and statutes in effect at the time of the offenses, the board also indicated that it would reach the same conclusion under the current standard, which was the standard in effect at the time of the hearing. On review, petitioner cites the current version of ORS 144.228 in his argument under his third assignment of error. The state does not dispute the applicability of any of the versions of the statute or the rules relied on by petitioner. Therefore, for the purposes of our analysis we apply the standards most favorable to petitioner.

report of the executive officer must include a detailed account of the prisoner's conduct while confined and a statement as to the prisoner's present attitude regarding the sentencing judge, the prosecuting district attorney, the arresting police officer, and the prisoner's previous criminal career. The report must also include a summary of any psychological or substance treatment and other activities that "will assist the board in understanding the psychological adjustment and social skills and habits of the person and that will assist the board in determining the likelihood for successful community reentry."

In light of the above standards, petitioner relies, in part, on Stuckey's and Colistro's opinions that the evidence demonstrates that his psychological conditions are in remission or in partial remission.[8] He concludes, based on the above evidence, that ORS 144.228(1)(b) mandates that he be given a parole release date. The state responds that, apart from the portions of Stuckey's and Colistro's reports that petitioner relies on, "there is substantial evidence supporting the board's finding that petitioner had a mental or emotional disturbance, deficiency, condition, or disorder predisposing him to the commission of any crime to a degree rendering him a danger to the health or safety of others."

In his report, Stuckey explained that

"[petitioner] has a rather lengthy history of voyeurism and was involved in a prior sex crime. [He] had very poor performance while on parole. He had his parole violated on at least five occasions between the years of 1982 and the time of his current arrest."[9]

---

[8] For instance, petitioner argues that, inasmuch as the applicable administrative rule requires a finding that his emotional condition be "severe," it is not possible for his condition to be both in partial remission and severe.

[9] Stuckey indicated that petitioner's test results show cause for concern. He noted that

"the profile is indicative of a moderate to severely defensive individual who has a strong need to influence others and to try to impress others. His approach in the interview could reflect a manipulative approach and could be related to his rather lengthy history of difficulty trusting others. His attitudes of resentment toward authority are high and therefore cause for concern. [Petitioner] appears to have a history of deep-seated distrust of authority with a capacity to develop his own norms and standards of behavior. He, therefore, acted out against societal rules, and the current test results indicate an ongoing capacity to

Stuckey also concluded that petitioner's "psychological profile raises serious concern that his persona might be manipulatory and that basic characterological changes have not been affected." Those findings provide substantial evidence in support of the conclusion that petitioner's disorders continued to render him a danger to others and that that danger could not adequately be controlled by supervision and mental health treatment. That is particularly the case because ORS 144.228(2) directs the board to consider all the information about petitioner and not just the opinions reached by the examining psychologists. Moreover, when petitioner was evaluated in 1982, he was determined to be a person whose pattern of sexual deviance was escalating, and, in 1997, another evaluation concluded that petitioner's voyeurism was "deeply ingrained" and that he continued to be dangerous at that time. Even petitioner acknowledged to Stuckey that he was "not cured." We conclude, based on the entire record, that the board could find that petitioner's personality disorder is only in partial remission. Because substantial evidence supports the board's findings, we reject petitioner's assignment of error.

■    Petitioner also assigns error to the board's order on the ground that the parole consideration hearing was not held within the time period mandated by the statute. Petitioner contends that, because both ORS 144.228(1)(b) (1987) and *former* OAR 255-38-005(1) (1985) required a parole consideration hearing to be held at intervals of 24 months until the parole date is set, the order is invalid and must be reversed. According to petitioner, "the Board's exercise of discretion is: (1) outside the range of discretion delegated to the agency by law; (2) in violation of statutory provisions; and (3) inconsistent with Board rules." We understand the board to concede that the May 22, 2002, hearing was not held within 24 months of the previous parole consideration, but it contends that it "substantially complied with the timeliness of the statute and rule."[10] Further, the board asserts that

challenge convention and authority. Such a profile is cause for concern and could indicate that [petitioner] might have difficulties following through on his parole plan and responding to parole supervision."

[10] The board asserts that it held the parole consideration hearing two months before petitioner's parole consideration date and that that date had been adjusted

petitioner suffered no prejudice as a result of the delayed hearing date.

ORS 144.228(1)(b) (1987) and *former* OAR 255-38-005(1) (1985) did not contemplate that the board could hold a parole release hearing outside the prescribed 24-month period; nor did the statute or rule provide a remedy for the board's failure to afford a timely hearing. The remedy for a violation of the time requirements is an issue of legislative intent. We are unwilling to write a provision into the statute that would mandate that petitioner be released on parole because of the board's violation of the time requirements. *See* ORS 174.010 (the office of the court is simply to declare what *is in a statute, not insert what has been omitted*). Rather, it appears that the legislature had other remedies in mind. For instance, petitioner could have compelled the board to act by writ of mandamus. ORS 34.110; *see also Valleur v. McGee*, 42 Or App 391, 600 P2d 914 (1979) (where Psychiatric Security Review Board failed to carry out its statutory duty to hold a hearing to review defendant's commitment to state hospital, petitioner was not entitled to be discharged; the remedy was to compel performance of the board's obligation by writ of mandamus). Moreover, petitioner does not argue that he suffered prejudice as a result of the delay. For the above reasons, we conclude that the procedural delay does not require a reversal of the board's order.

Affirmed.

---

by approximately three months to reflect that the Department of Corrections had decertified 105 days of petitioner's credit for time served. As a result of the adjustment, the parole consideration hearing was held more than two years after petitioner's previous parole consideration hearing.