Submitted on record and briefs January 6, reversed and remanded June 14, 2006

REX LEE LARSEN,
*Petitioner,*

*v.*

BOARD OF PAROLE
AND POST-PRISON SUPERVISION,
*Respondent.*

A121072

138 P3d 16

See also 44 Or App 643, 606 P2d 1159.

Rex Lee Larsen filed the briefs *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Carolyn Alexander, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

In 1978, petitioner was convicted of aggravated murder and sentenced to life imprisonment for a minimum of 20 years without the possibility of parole. In 2002, he requested parole. The Board of Parole and Post-Prison Supervision issued a final order declining to set a parole release date after finding that petitioner was not likely to be rehabilitated within a reasonable period of time. Petitioner now seeks judicial review of that final order. His principal argument is that the board erred in failing to comply with ORS 163.105(3) (1977), which required that aggravated murder review hearings be "conducted in the manner prescribed for a contested case hearing" under the state administrative procedures act (APA).[1] The board argues that, notwithstanding that provision, it is not obligated to conduct its review hearings as contested case hearings under the APA. We agree with petitioner and reverse and remand for a new hearing.

The relevant historical and procedural facts are undisputed. Petitioner committed, among other things, aggravated murder in February 1978.[2] He was convicted of his crimes in October 1978 and, as we have noted, was sentenced to life in prison for a minimum of 20 years without the possibility of parole. In 1998, petitioner unsuccessfully sought a parole release date.

On July 15, 2002, petitioner filed a written request for a review hearing. Attached to his request were several motions in which he invoked various provisions of the APA pertaining to the conduct of contested case proceedings.

---

[1] Petitioner and the board focus their arguments on ORS 163.105(3) (1977). The relevant portion of the 1977 version of ORS 163.105 was substantively identical to the version in effect at the time of petitioner's 2002 hearing, although by the latter time subsection (3) had been renumbered as subsection (2). Or Laws 1985, ch 3, § 1. *See Alexander v. Board of Parole*, 205 Or App 443, 134 P3d 1055 (2006) (applying substantive criteria for parole release provided in version of the statute in effect at the time of the petitioner's crime; applying procedural requirements in effect at the time of the hearing). In addition, as discussed below, in determining the meaning of the statute, we necessarily examine the intent of the 1977 legislature.

[2] The facts underlying petitioner's conviction are set out in *State v. Larsen*, 44 Or App 643, 606 P2d 1159, *rev den*, 289 Or 373 (1980).

In August 2002, the board responded by letter to petitioner's motions regarding the conduct of the hearing. In essence, the board informed petitioner that it was exempt from the statutory contested case hearing provisions on which petitioner had based his request. The board scheduled a hearing for October 2002.

The hearing was held by video conference. Petitioner was located at a correctional facility, and his counsel and the board were together in a different location. Petitioner and the board were able to communicate directly. During the evidentiary portion of the hearing, however, petitioner's counsel did not have access to a microphone; instead, a board member relayed counsel's remarks to petitioner. The board provided counsel with a microphone for the purpose of making a closing statement.

At the hearing, petitioner spoke and responded to the board's questions. Other evidence considered by the board included the original presentence investigation report dated October 1978; parole analysts' reports dated February 1979 and May 1986; and a psychological evaluation of petitioner by a psychologist, Shellman, dated March 1994. Evidence submitted by petitioner included transcripts of grades earned in community college courses during the late 1970s and in 1980; certificates of completion of programs he attended during his incarceration; an award certificate relating to his prison work performance; a 1994 letter from a psychologist, Newton; and letters of support from family members dated, variously, 1995 and 1998.

Following the hearing, the board issued an order finding that petitioner was not likely to be rehabilitated within a reasonable period of time. Petitioner sought administrative review. He asserted, among other things, that certain evidence considered by the board was prejudicial and that the board failed to consider other relevant evidence. He also objected to his inability to communicate directly with his counsel during the hearing and to the board's failure to conduct the hearing in accordance with various contested case procedures set out in the APA.

The board issued an administrative review response in which it explained that, in reaching its decision, it properly

considered petitioner's criminal history, the circumstances of his current crime, his institutional conduct, and the treatment programs he had completed; the board also noted that petitioner had failed to specify what prejudicial evidence was considered by the board. The board also rejected petitioner's contention that it was required to consider petitioner's entire file, noting that it was petitioner's burden to show that he was likely to be rehabilitated. Finally, the board again rejected petitioner's assertions relating to the conduct of the hearing. It therefore denied relief.

On judicial review, petitioner asserts five assignments of error: (1) the board erred by preventing him from communicating with his counsel during the hearing; (2) the board erred in failing to conduct the hearing in the manner prescribed for contested case hearings under the APA, as required by ORS 163.105(3) (1977); (3) the board's order finding him not likely to be rehabilitated within a reasonable period of time is not supported by substantial evidence; (4) the board erred in considering irrelevant evidence; and (5) the board erred in requiring him to prove that he is likely to be rehabilitated within a reasonable period of time because he has served the minimum period of confinement.

■ Because it obviates the need to address some of petitioner's other assignments, we begin with his second assignment, in which he argues that the board erred by not conducting his aggravated murder review hearing in the manner prescribed for a contested case hearing under the APA, ORS 183.310 to 183.500. In particular, petitioner argues that the board erred in failing to apply ORS 183.415, providing for notice of a contested case proceeding; ORS 183.425 and ORS 183.440, providing for the deposition and subpoena of witnesses; and ORS 183.470, requiring that a final order be accompanied by findings of fact and conclusions of law. Petitioner also argues that the board violated ORS 183.450, providing that irrelevant, immaterial, or unduly prejudicial evidence shall be excluded, when it considered an eight-year-old psychological evaluation and when it failed to notify him of purported *ex parte* communications from the sentencing judge and from a parole analyst. Finally, petitioner contends that the board erred in rejecting his motions to designate the

board's "entire record" as the record for hearing purposes and to be informed of any *ex parte* communications.

As noted, in advancing those contentions, petitioner relies on ORS 163.105(3) (1977), which provided, in part, that, "[n]otwithstanding the provisions of ORS chapter 144" and other statutes setting out the duties and function of the board, an aggravated murder review hearing "shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500[.]"

In response, the board contends that, although ORS 163.105(3) (1977) required that review hearings be conducted in accordance with the contested case procedures set out in the APA, among those provisions of the APA is ORS 183.315(1), which expressly exempts the board from "ORS 183.410, 183.415, 183.425, 183.440, 183.450, 183.452, 183.458, 183.460, 183.470 and 183.480," which are the very provisions that petitioner contends apply to his hearing.

Petitioner replies that, although ORS 183.315(1) does state that the board is exempt from the enumerated contested case provisions of the APA, that exemption is in direct contradiction of ORS 163.105(3) (1977), which states that the board *is* subject to those very provisions. According to petitioner, in the case of such an irreconcilable conflict, the murder rehabilitation hearing statute should control, as it is the more specific.

Thus framed, the issue is one of statutory construction: What did the legislature most likely intend when it provided that aggravated murder review hearings "shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500"? The answer is determined by examination of the text of the relevant statutes in context and, if necessary, their enactment history and other aids to construction. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (2003). In conducting that examination, it is well to emphasize that our focus is "the intent of the legislature that passed [the] statute." *State v. Perry*, 336 Or 49, 52, 77 P3d 313 (2003); *Holcomb v. Sunderland*, 321 Or 99, 105, 894 P2d 457 (1995) ("[t]he proper inquiry focuses on what the legislature intended at the time of enactment and

discounts later events"). In this case, the version of the statute that was in effect at the time of the hearing originated in 1977. We therefore focus on what the legislature intended at that time. *See, e.g., State v. Sauer*, 205 Or App 428, 432, 134 P3d 1050 (2006) (because current statutory language originated in 1996, proper focus is what the enacting legislature intended).

We begin with the text of ORS 163.105 (1977), which provided, in part:

> "(2)   When a defendant is convicted of murder defined as aggravated murder * * *, the court shall order that the defendant shall be confined for a minimum of 20 years without possibility of parole * * *.

> "(3)   * * * [A]t any time after 15 years from the date of imposition of a minimum period of confinement pursuant to subsection (2) of this section, the State Board of Parole, upon the petition of a prisoner so confined, shall hold a hearing to determine if the prisoner is likely to be rehabilitated within a reasonable period of time. The sole issue shall be whether or not the prisoner is likely to be rehabilitated within a reasonable period of time. *The proceeding shall be conducted in the manner prescribed for a contested case hearing under ORS 183.310 to 183.500* except that:

> "(a)   The prisoner shall have the burden of proving by a preponderance of the evidence that he is likely to be rehabilitated within a reasonable period of time; and

> "(b)   The prisoner shall have the right, if he is without sufficient funds to employ an attorney, to be represented by legal counsel, appointed by the board, at state expense."

Three matters of significance may be drawn from the bare text of that statute. First, the statute plainly required that aggravated murder review hearings "shall be conducted" pursuant to the stated provisions of the APA. The statute expressed a command, not a choice.

Second, that mandate is that the review hearings "shall be conducted" in a particular "manner"—specifically, the "manner prescribed for a contested case hearing." We presume that the legislature meant what it said, that is, that the statute imposed *some* sort of requirement as to the manner in which the review hearings must be conducted. "As a

general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage." *State v. Stamper*, 197 Or App 413, 417, 106 P3d 172, *rev den*, 339 Or 230 (2005).

The legislature further elaborated that the "manner prescribed for a contested case hearing" derived from specific statutes setting out those requirements, that is, the requirements for contested case hearings set out in ORS 183.310 to 183.500. In 1977, the statutes within that range of citations that pertained to contested case proceedings consisted of ORS 183.415 (notice, hearing, and record requirements), ORS 183.418 (interpreters for the disabled in contested cases), ORS 183.425 (depositions and subpoenas of material witnesses), ORS 183.440 (subpoenas generally), ORS 183.450 (rules of evidence in contested cases), ORS 183.460 (examination of the evidence in contested cases), and ORS 183.470 (orders in contested cases). Apparently, the legislature intended those statutes to apply to aggravated murder review hearings; they were the specific statutes to which the legislature collectively referred in describing what it meant by a hearing in the "manner prescribed for a contested case hearing."

Third, the legislative mandate stated in ORS 163.105(3) (1977) came with two—and only two—express exceptions. One exception pertained to the burden of proof. The other pertained to the appointment of counsel. Given that the legislature took the trouble to express those two exceptions, it is reasonable to infer that it intended no others. *Waddill v. Anchor Hocking, Inc.*, 330 Or 376, 382, 8 P3d 200 (2000), *adh'd to on recons*, 331 Or 595 (2001) (the expression of three instances in which a defense may be asserted implies an intent to limit the assertion of the defense to only those three circumstances).[3]

The wording of the statute thus strongly suggests that the legislature intended ORS 163.105(3) (1977) to mean what it says: The board must conduct aggravated murder

---

[3] Interestingly, the board's own administrative rules concerning the conduct of aggravated murder review hearings provide that it is obligated to conduct the hearing "in the manner prescribed for a contested case hearing," subject to only two exceptions, namely, the ones identified in ORS 163.105(3). *See* OAR 255-032-0025.

review hearings "in the manner prescribed for contested case hearings," as set out in the relevant provisions of the APA.

The immediate context supports that reading of the statute. The version of the APA in effect at the time that the legislature enacted ORS 163.105(3) (1977) actually defined the term "contested case." Among other things, it defined the term as "a proceeding before an agency * * * [w]here the agency by rule or order provides for *hearings substantially of the character required by ORS 183.415, 183.425 and 183.450 to 183.470*." ORS 183.310(2)(d) (1977) (emphasis added). Thus, the legislature described the essential characteristics of a "contested case" hearing as those described in the enumerated statutes—the same statutes that it cross-referenced in ORS 163.105(3) (1977). In fact, the only statute from among those cross-referenced by ORS 163.105(3) (1977) that is not mentioned in ORS 183.310(2)(d) as an essential characteristic of a "contested case" is ORS 183.418, which concerns the availability of interpreters. In that light, the legislature's reference to the conduct of aggravated murder review hearings "in the manner prescribed for a contested case hearing" would naturally seem to implicate the same statutes, which define the very nature of a "contested case" hearing.

That said, the board is correct that, in its cross-reference to the contested case provisions of the APA, ORS 163.105(3) (1977) also incorporated ORS 183.315(1) (1977), which at that time provided that the provisions of "ORS 183.410, 183.415, 183.425, 183.440, 183.450, 183.460, 183.470 and 183.480 do not apply" to the board. The question is what the legislature intended when it stated both that (1) the board is required to conduct aggravated murder review hearings "in the manner prescribed for a contested case hearing" and (2) the board is exempt from that very requirement.

There are only two possibilities. The first possibility is that the legislature intended to accomplish a feat of legislative sleight of hand: Now you see it (ORS 163.105(3) (1977)) required murder rehabilitation hearings to be conducted "in the manner prescribed for a contested case hearing"). Now you don't (ORS 183.315(1) (1977)) exempted the board from

that very requirement). The second possibility is that the legislature intended that, *generally speaking*, the board is exempt from the contested case provisions of the APA but that, in the specific case of aggravated murder review hearings, it intended the board nevertheless to comply with those provisions.

As between the two possibilities, we find the latter to be most likely the one that the legislature intended.

To begin with, the one advocated by the board renders the requirement in ORS 163.105(3) (1977) meaningless. The board does not explain, and we do not understand, what the statute would mean when it requires that aggravated murder review hearings be conducted "in the manner prescribed for a contested case hearing" if the board is exempt from those very procedural requirements. As we have noted, we are ordinarily required to avoid giving the legislature's enactment such evanescent effect. *See, e.g., Stamper*, 197 Or App at 417; *EQC v. City of Coos Bay*, 171 Or App 106, 110, 14 P3d 649 (2000) (court is required to avoid interpreting statutes in manner that renders any provision meaningless or redundant).

Moreover, the board's proposed construction does not take into account the facts that, when the legislature enacted ORS 163.105(3) (1977), the exemption that is expressed in ORS 183.315(1) already existed and that, presumably, the legislature was aware of it. Thus, in spite of the existing exemption from the contested case provisions of the APA, the legislature in 1977 enacted the statute that required that aggravated murder review hearings be conducted "in the manner prescribed for contested case hearings" by the APA. In such circumstances, courts ordinarily hold that the earlier statute must yield to the later one. *See, e.g., State ex rel Huddleston v. Sawyer*, 324 Or 597, 604, 932 P2d 1145, *cert den*, 522 US 994 (1997).

In a related vein, the board's argument runs afoul of the statutory canon of construction that, "[w]hen a general and particular provision are inconsistent, the latter is paramount to the former so that a particular intent controls a general intent that is inconsistent with the particular intent." ORS 174.020(2); *see also Bobo v. Kulongoski*, 338 Or 111,

119, 107 P3d 18 (2005) (applying canon); *Grossman and Grossman*, 338 Or 99, 109, 106 P3d 618 (2005) (same). We are mindful of the fact that it is not always easy to discern which among statutes is the "general" and which the "specific," but the statutes at issue in this case do not pose that difficulty. ORS 163.105(3) (1977) states a rule of procedure that plainly applies in only one class of proceeding over which the board has authority—aggravated murder review hearings. In contrast, ORS 183.315(1) states an exemption that applies to the board generally and without any limitation to particular types of cases or hearings. That being the case, to the extent that the two statutes conflict, ORS 163.105(3) (1977) controls.

The board insists that rules of construction concerning the controlling effect of later or more specific statutes apply only when there is an irreconcilable conflict. In this case, the board argues, there is no conflict. ORS 163.105(3) (1977) incorporates a number of provisions of the APA, including the exemption stated in ORS 183.315(1). According to the board, both statutes may be given literal effect: "ORS 163.105(3) (1977) specifically requires that a murder review hearing be conducted under the provisions of ORS 183.310 to 183.500. One of the statutes included in that range, and therefore part of the murder review process, is ORS 183.315(1). ORS 183.315(1) specifically exempts the board" from the contested case requirements of the APA. The problem is that, as we have noted, reading the statute in that manner does not actually give effect to all the statute's provisions. Among other things, it deprives of effect the statutory command that murder rehabilitation hearings be conducted "in the manner prescribed for contested case proceeding." That is so because, practically speaking, once the exemption in ORS 183.315(1) is given effect, there are no statutes pertaining to the conduct of contested case hearings to which the board remains subject.

Implicit in the board's argument is the suggestion that ORS 183.315(1) does not actually have that effect because it exempts the board from only certain statutory provisions that pertain to the conduct of contested case hearings, leaving others to apply to board proceedings. And, indeed, under the *current* version of the APA, that is the case. Among

the statutes pertaining to the conduct of contested cases from which the board is not now exempt are ORS 183.413 (notice of rights and procedures) and ORS 183.462 (*ex parte* communications). The problem with that argument is that any such additional statutory provisions were enacted *after 1977*. As we have noted, the proper focus of our analysis is our determination of what the legislature most likely intended about the effect of the relevant provision of ORS 163.105 *as of the time of enactment. Perry*, 336 Or at 52. Indeed, as the Supreme Court made clear in *Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997), only other statutes that existed at the time of enactment of the statute at issue properly may be considered in evaluating the likely intentions of the legislature.

In this case, as of the time of the enactment of ORS 163.105(3) (1977), the provisions of the APA from which the board claims it is exempt were the only ones that could have applied, with the exception of ORS 183.418, concerning the availability of interpreters. We find it highly unlikely that the legislature intended the requirement stated in ORS 163.105(3) (1977) that aggravated murder review hearings be conducted "in the manner prescribed for a contested case hearing" to require only that interpreters be made available.

To begin with, if that is what the legislature intended, it had only to cross-reference ORS 183.418 itself and not the entirety of the contested case provisions of ORS chapter 183. But, more important, a statute providing that a "handicapped" person is entitled to an interpreter is not ordinarily what is meant by conducting a hearing "in the manner" prescribed by statute. The "manner" of a hearing ordinarily refers to "a characteristic mode of activity," the "mode or method in which something is done," or the "mode of procedure." *Webster's Third New Int'l Dictionary* 1376 (unabridged ed 2002). Consistently with that ordinary meaning, a number of other statutes refer to the conduct of a hearing "in the manner" prescribed by particular provisions; in each case, those statutes refer to the mode or method of conducting the hearing, such as notice requirements, rules of evidence, burdens of proof, and the like. *See, e.g.*, ORS 215.130(8); ORS 341.045(2); ORS 823.031(2).

The board finally argues that requiring it to comply with the contested case procedures of the APA—in particular, the provisions requiring final orders to contain findings of fact and conclusions of law—is contrary to ORS 144.335(3), which provides that "[t]he order of the board need not be in any special form[.]" According to the board, "[t]he plain meaning of ORS 144.335 belies petitioner's argument. ORS 144.335 is a related statute and so must be considered in construing ORS 163.105."

The problem with the board's argument in that regard is that it neglects to take into account the fact that ORS 163.105(3) (1977), as well as later versions of that statute, is prefaced with the proviso that it applies "[n]otwithstanding the provisions of ORS chapter 144." *See* *State v. Milburn*, 205 Or App 205, 214, 134 P3d 969 (2006) ("notwithstanding" clause indicates an exemption from the enumerated provisions).

In short, we conclude that ORS 163.105 requires that aggravated murder review hearings be conducted "in the manner prescribed for a contested case hearing" under the APA and that the board is not exempt from those requirements. Because the board does not argue that petitioner's October 2002 hearing comported with all of those requirements, it necessarily follows that its order must be reversed and remanded for a new hearing.

■■ Because it is likely to arise on remand, we also consider petitioner's first assignment of error, in which he argues that his inability during the hearing to communicate directly with his counsel deprived him of his rights to counsel and to due process of law as provided in ORS 163.105(3)(b) (1977), in what petitioner styles the "due course of law clause" in Article I, section 10, of the Oregon Constitution, and in the Due Process Clause of the Fourteenth Amendment to the United States Constitution.[4] Specifically, in his reply

---

[4] Article I, section 10, of the Oregon Constitution provides that "[n]o court shall be secret, but justice shall be administered, openly and without purchase, completely and without delay, and every man shall have remedy by due course of law for injury done to him in his person, property, or reputation." The Fourteenth Amendment provides, in part, that no state shall "deprive any person of life, liberty, or property, without due process of law."

brief, petitioner contends that, if afforded the opportunity to be advised by counsel, he might not have agreed to the accuracy of the presentence investigation report considered by the board. The board responds that, by failing to object at the hearing, petitioner waived any objection to the fact that he and counsel were unable to confer directly. On the merits, the board argues that, by submitting a supporting memorandum and petitioner's response to his psychological evaluation, as well as by making a closing statement, counsel "fully participated" in the hearing and that petitioner's constitutional rights to counsel and to due process therefore were not violated.

■ The preservation requirements established in ORAP 5.45(1) apply to petitions for review of agency action. *Thomas Creek Lumber v. Board of Forestry*, 188 Or App 10, 30, 69 P3d 1238 (2003). Here, petitioner raised the issue of counsel's participation in his request for administrative review. That was sufficient to give the board the opportunity to address the issue. *Cf. Kniss v. PERB*, 184 Or App 47, 51, 55 P3d 526 (2002) (citing *State v. Wyatt*, 331 Or 335, 343, 15 P3d 22 (2000); where neither the hearing officer nor the agency had an opportunity to address the arguments made by the party on judicial review, the court declined to consider the arguments on judicial review). The issue therefore is preserved for our review.

As an initial matter, the record demonstrates that legal counsel was appointed for petitioner and that counsel presented evidence and argument on his behalf. We therefore reject without further discussion petitioner's argument that the physical arrangements at issue in this case violated ORS 163.105(3)(b) (1977).

As to petitioner's constitutional challenges, as we have noted, petitioner belatedly contends in his reply brief that, had he been able to communicate directly with counsel, he might have been advised to dispute the accuracy of the presentence investigation report. However, he fails even there to specify which portions of the report are inaccurate and in what way. Moreover, even if he had challenged the accuracy of the report, the board would have been entitled to consider it and to give it whatever weight the board deemed

appropriate. Petitioner therefore has failed to demonstrate any prejudice resulting from his asserted inability to consult with and be advised by counsel in regard to the presentence investigation report. *Cf. Guzman v. Board of Parole*, 200 Or App 448, 456, 115 P3d 983 (2005), *rev den*, 340 Or 34 (2006) (noting that, in challenging board's order on ground that parole release hearing was not held within statutorily required time period, the petitioner did not assert that he was prejudiced by the delay); *Maimon v. Board of Parole*, 138 Or App 328, 331, 909 P2d 874 (1995), *rev den*, 323 Or 690 (1996) (no prejudice shown arising out of the board's erroneous reference in board action form to nature of the petitioner's offense). Conversely, the record demonstrates that petitioner's counsel participated in the hearing and that both petitioner and counsel presented evidence to the board. In short, even assuming that petitioner's entitlement to appointed counsel under ORS 163.105(3)(b) (1977) also implicated his rights under Article I, section 10, and the Fourteenth Amendment, those constitutional rights were not violated here.

Because we remand for a new hearing, we need not consider whether the board's October 2002 order is supported by substantial evidence in the record, as asserted in petitioner's third assignment of error. We also need not consider his fourth assignment of error, in which he asserts that the board erred in considering various issues at the 2002 hearing. The argument in his fifth assignment was rejected by this court in *Larsen v. Board of Parole*, 191 Or App 526, 84 P3d 176, *rev den*, 337 Or 248 (2004).

Reversed and remanded.