Submitted on record and briefs November 7, 2005, affirmed May 3, petition for review denied June 27, 2006 (341 Or 141)

## STATE OF OREGON,
*Respondent,*

*v.*

## GARY LANE SAUER,
*Appellant.*

## 03CR0005; A122655

134 P3d 1050

James N. Varner filed the brief for appellant.

Gary Lane Sauer filed the supplemental brief *pro se*.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Kaye E. McDonald, Assistant Attorney General, filed the brief for respondent.

Before Landau, Presiding Judge, and Schuman and Ortega, Judges.

LANDAU, P. J.

## LANDAU, P. J.

Defendant appeals a judgment of conviction for five counts of identity theft. ORS 165.800. He argues that the trial court erred in imposing a sentence under the statute that was in effect at the time of his offenses, rather than the statute in effect at the time of sentencing. We conclude that the trial court did not err and affirm.

The relevant facts are uncontested. Defendant was charged by indictment with five counts of identity theft arising out of five different instances in which he converted the personal identification of his 73-year-old father during October 2002. In May 2003, defendant pleaded no contest to each of the five counts. Defendant was sentenced in August 2003.

At the time that defendant committed his offenses, ORS 137.717 (2001) provided, in part:

"(1)   When a court sentences a person convicted of:

"* * * * *

"(d)   Identify theft under ORS 165.800, the presumptive sentence is 13 months incarceration, * * * if the person has:

"* * * * *

"(A)   A previous conviction for identity theft under ORS 165.800[.]"

In 2001, however, the legislature amended that statute so that, effective July 1, 2003, it now provides that "[w]hen a court sentences a person convicted of" identity theft, the presumptive sentence is 13 months if the person has *four* previous convictions for identity theft under ORS 165.800. Or Laws 2001, ch 784, § 1.

At sentencing in August 2003, the trial court proposed to sentence defendant to six months on one count of identity theft. The court then suggested that, as to each of the remaining four counts of identity theft, there was a previous conviction for identity theft and for each count, under ORS 137.717 (2001), the presumptive sentence would be 13 months. Defendant objected, arguing that he should be subject to the more favorable version of ORS 137.717 that went

into effect after he committed the offenses but before the sentencing. That is, defendant argued that the presumptive minimum sentence of 13 months should be available only once he has *four* prior convictions for identity theft under ORS 165.800, not just one. As a result, he argued, only one of his five counts of identity theft should be subject to the 13-month presumptive sentence. The trial court disagreed and imposed the six-month sentence on the first count and the presumptive minimum sentence of 13 months on each of the remaining counts, each to be served consecutively to the other sentences.

On appeal, defendant argues that the trial court erred in failing to apply the current version of ORS 137.717. According to defendant, the plain language of the statute required the court to do so. That is so, defendant argues, because the statute states that it applies "[w]hen the court sentences a person" convicted of the relevant offense. The state responds that nothing in the text of the statute suggests that the legislature intended it to apply retroactively. We agree with the state.

The dispute is resolved by application of familiar principles. When construing a statute, our goal is to determine the meaning most likely intended by the legislature that enacted it. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). We begin with the text in context and, if necessary, resort to legislative history and other aids to construction. *Id.* at 610-12.

In this case, the text of the current version of ORS 137.717 provides that "[w]hen the court sentences a person" convicted of identity theft under ORS 165.800, the presumptive sentence is 13 months if the person has four previous convictions for that offense. In isolation, the phrase "[w]hen the court sentences a person" reasonably could be taken to suggest, as defendant contends, that the legislature intended the statute to apply regardless of when the actual offense occurred.

We do not read statutes in isolation, however. *See, e.g., Stevens v. Czerniak*, 336 Or 392, 401, 84 P3d 140 (2004) ("text should not be read in isolation but must be considered in context"). In particular, we must examine the language in

the context in which the legislature enacted the phrase into law with the objective of determining what the legislature would have understood about the phrasing *at the time of enactment. Nakashima v. Board of Education*, 204 Or App 535, 549, 131 P3d 749 (2006) ("In other words, we attempt to determine what the legislature actually intended at the time of enactment.").

In this case, the phrase "[w]hen the court sentences a person" derives from a previous version of the statute; it has, in fact, always been part of ORS 137.717, that is, since that statute was enacted in 1996. Or Laws 1996, ch 3, § 1. That fact is important, because, in 1996, there was no special sentencing scheme for repeat property offenders, and the then-new statute imposed tougher penalties for such offenders than existed previously. That being the case, it is unlikely that the legislature intended the statute to apply retroactively to offenses committed prior to its effective date, for that would run afoul of the state and federal prohibitions against *ex post facto* legislation. *See generally State v. Cookman*, 324 Or 19, 27, 920 P2d 1086 (1996) (describing *ex post facto* analysis under state and federal constitutions). Instead, it is much more likely that the legislature intended the statute—and more specifically, the phrase "[w]hen the court sentences a person"—to refer to sentencing for offenses committed after the effective date of the enactment. *See, e.g., State v. Lanig*, 154 Or App 665, 674, 963 P2d 58 (1998) ("[I]n the face of competing constructions of an enactment, we generally are required to 'choose the interpretation which will avoid any serious constitutional difficulty.'" (Quoting *State v. Duggan*, 290 Or 369, 373, 622 P2d 316 (1981).)).

Defendant acknowledges the *ex post facto* implications of his proposed reading of the statute. He argues that, to the extent that the statute—as he reads it—conflicts with constitutional prohibitions against *ex post facto* legislation, he waives those constitutional protections. The problem is that the issue before us is what the legislature most likely intended the statute to mean. That is not something that defendant can waive.

Defendant advances other arguments on appeal, which we reject without discussion.

Affirmed.