Submitted February 24, reversed and remanded for entry of convictions for two counts of first-degree theft and one count of second-degree theft and for resentencing; otherwise affirmed November 16, 2011

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRADLEY STUART EARLS,
*Defendant-Appellant.*

Lane County Circuit Court
200704777; A140603

267 P3d 171

Peter Gartlan, Chief Defender, and Susan Fair Drake, Senior Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

John R. Kroger, Attorney General, David B. Thompson, Interim Solicitor General, and Michael R. Washington, Senior Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and Sercombe, Judge, and Rosenblum, Senior Judge.

SERCOMBE, J.

## SERCOMBE, J.

Following a guilty plea, defendant was convicted of 12 counts of negotiating a bad check, ORS 165.065; two counts of theft in the first degree, ORS 164.055; and one count of theft in the second degree, ORS 164.045. On appeal from the trial court's judgment of conviction, defendant contends that the court erred in (1) imposing a presumptive 13-month sentence for each count of first-degree theft pursuant to ORS 137.717 (2005)[1] and (2) failing to merge defendant's guilty verdicts for 12 counts of negotiating a bad check with his guilty verdicts for first- and second-degree theft. Defendant acknowledges that he did not raise the merger issue below, but he asserts that the trial court committed plain error, ORAP 5.45(1), and that we should exercise our discretion to correct that error. *See Ailes v. Portland Meadows, Inc.*, 312 Or 376, 381-82, 823 P2d 956 (1991). For the reasons explained below, we agree with defendant's contentions with respect to both of his assignments of error. Accordingly, we reverse and remand for entry of convictions for two counts of first-degree theft and one count of second-degree theft and for resentencing.

In his first assignment of error, defendant asserts that the court improperly imposed a presumptive 13-month sentence under ORS 137.717(1)(b) for each count of first-degree theft.[2] At the time defendant pleaded guilty, he had at

---

[1] All citations to ORS 137.717 reference the 2005 version of the statute, which was in effect at the time defendant committed the relevant offenses. *See State v. Sauer*, 205 Or App 428, 134 P3d 1050, *rev den*, 341 Or 141 (2006) (applying the version of ORS 137.717 that was in effect at the time of the defendant's offenses).

[2] ORS 137.717 provides, in part:

"(1) When a court sentences a person convicted of:

"* * * * *

"(b) Theft in the first degree under ORS 164.055, * * * the presumptive sentence is 13 months of incarceration, unless the rules of the Oregon Criminal Justice Commission prescribe a longer presumptive sentence, if the person has:

"* * * * *

"(B) Four previous convictions for any combination of the other crimes listed in subsection (2) of this section.

"(2) The crimes to which subsection (1) of this section applies are:

"* * * * *

"(b) Theft in the first degree under ORS 164.055;

least four previous general court-martial convictions for theft-related offenses, which the state argued qualified defendant as a repeat property offender subject to ORS 137.717(1)(b). Defendant objected, asserting that his court-martial convictions were not "previous conviction[s]" under ORS 137.717(4) because a court-martial is not a "federal court" as that term is used in ORS 137.717(4)(b).[3] The trial court agreed with the state and sentenced defendant, under ORS 137.717(1)(b), to two presumptive 13-month sentences, one for each first-degree theft conviction.

On appeal, defendant reiterates his argument from below that a court-martial conviction is not a conviction entered in a "federal court" as that term is used in ORS 137.717(4)(b). Specifically, defendant argues that the legislature intended the term "federal court" to include courts authorized by Article III of the United States Constitution, and to exclude legislative courts, like courts-martial, created by Congress pursuant to its powers under Article I of the United States Constitution. Therefore, in his view, the trial court erred in sentencing him as a repeat property offender. Although the state acknowledges that Article III "is recognized as establishing the federal court system," it argues that a court-martial is a "federal court" for purposes of the statute and that, accordingly, the trial court did not err. We review for errors of law. *State v. Escalera*, 223 Or App 26, 28, 194 P3d 883 (2008), *rev den*, 345 Or 690 (2009).

ORS 137.717(1)(b) permits a court to impose a presumptive sentence of 13 months' imprisonment where a defendant is convicted of, among other crimes, first-degree theft, ORS 164.055, and the defendant has had four previous

---

"* * * * *

"(i)  Computer crime under ORS 164.377[.]"

[3] ORS 137.717(4) provides, in part:

"As used in this section, 'previous conviction' includes:

"* * * * *

"(b)  Convictions entered in any other state or federal court for comparable offenses."

Defendant also argued below that his court-martial convictions were not for "comparable offenses" within the meaning of ORS 137.717(4)(b). He does not advance that argument on appeal.

convictions for crimes listed in ORS 137.717(2). "Previous conviction[s]" include "[c]onvictions entered in any other state or federal court for comparable offenses." ORS 137.717(4)(b).

Whether the term "federal court" in ORS 137.717(4)(b) includes a court-martial is a question of statutory interpretation. When construing a statute, we examine the text of the statute in context, along with any relevant legislative history, to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171-72, 206 P3d 1042 (2009).

ORS 137.717 does not define the term "federal court." Generally, we give an undefined statutory term its plain, natural, and ordinary meaning. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993). However, "we give words that have well-defined legal meanings those meanings." *Dept. of Transportation v. Stallcup*, 341 Or 93, 99, 138 P3d 9 (2006); *see also Tharp v. PSRB*, 338 Or 413, 423, 110 P3d 103 (2005) (terms of art are given specialized meanings instead of their plain, natural, and ordinary meanings). Here, the term "federal court" is a legal term of art and refers to "[a] court having federal jurisdiction." *Black's Law Dictionary* 408 (9th ed 2009).[4] "Federal jurisdiction" is defined, rather circularly, as "[t]he exercise of federal-court authority." *Id.* at 929. Accordingly, we look to the federal constitution and case law to determine whether courts-martial exercise the authority conferred upon federal courts.

Federal courts and courts-martial belong to "separate judicial systems," *see Parisi v. Davidson*, 405 US 34, 40, 92 S Ct 815, 31 L Ed 2d 17 (1972), and, as we explain, courts-martial do not exercise federal jurisdiction. Federal courts derive their jurisdiction from Article III of the United States Constitution.[5] *See Toth v. Quarles*, 350 US 11, 15, 76 S Ct 1,

---

[4] Notably, a court-martial is defined as "[a]n ad hoc military court *convened under military authority* to try someone, particularly a member of the armed forces, accused of violating the Uniform Code of Military Justice." *Black's* at 413 (emphasis added).

[5] Article III provides, in part:

"The judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish. The Judges, both of the supreme and inferior Courts, shall hold their

100 L Ed 8 (1955) ("[T]he jurisdiction of federal courts [is] set up under Article III of the Constitution * * *. It is the primary, indeed the sole business of [Article III] courts to try cases and controversies between individuals and between individuals and the Government. This includes trial of criminal cases.").

In contrast, Congress established the military judicial system, including courts-martial, pursuant to Article I of the United States Constitution.[6] *Weiss v. United States*, 510 US 163, 166-67, 114 S Ct 752, 127 L Ed 2d 1 (1994). Courts-martial are legislative courts, and "their jurisdiction is independent of Art[icle] III judicial power." *Parisi*, 405 US at 41 n 7; *see also Kendall v. Army Bd. for Corr. of Military Records*, 996 F2d 362, 366 (DC Cir 1993) ("[T]he military justice system is independent of the federal court system."). Unlike federal courts, courts-martial have no authority to try civilians in criminal cases. *Toth*, 350 US at 23 ("We hold that Congress cannot subject civilians like [a former serviceman] to trial by court-martial. They, like other civilians, are entitled to have the benefit of safeguards afforded those tried in the regular courts authorized by Article III of the Constitution.").

Federal courts are distinguished from courts-martial in that they provide greater constitutional protections to defendants. As observed by the United States Supreme Court in *Toth*:

> "[Article III] courts are presided over by judges appointed for life, subject only to removal by impeachment. Their compensation cannot be diminished during their continuance in office. The provisions of Article III were designed to give judges maximum freedom from possible coercion or influence by the executive or legislative branches of the Government. But the Constitution and the Amendments in the Bill of Rights show that the Founders were not satisfied with leaving determination of guilt or innocence to judges, even though wholly independent. They further provided that no person should be held to answer in those courts for capital

Offices during good Behaviour, and shall, at stated Times, receive for their Services, a Compensation, which shall not be diminished during their Continuance in Office."

[6] Article I provides, in part, that "Congress shall have Power To * * * make Rules for the Government and Regulation of the land and naval Forces[.]"

or other infamous crimes unless on the presentment or indictment of a grand jury drawn from the body of the people. Other safeguards designed to protect defendants against oppressive governmental practices were included. One of these was considered so important to liberty of the individual that it appears in two parts of the Constitution. Article III, § 2, commands that the 'Trial of all Crimes, except in Cases of Impeachment, shall be by Jury * * *.' And the Sixth Amendment provides that 'In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the state and district wherein the crime shall have been committed * * *.' This right of trial by jury ranks very high in our catalogue of constitutional safeguards."

350 US at 16. The constitution does not provide defendants tried in courts-martial with the same protections. *See* US Const, Amend V ("No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, *except in cases arising in the land or naval forces,* or in the Militia, when in actual service in time of War or public danger[.]" (Emphasis added.)); *Toth,* 350 US at 14 n 5 ("[The Fifth Amendment] makes clear that there need be no [grand jury] indictment for such military offenses."); *id.* at 17 ("[T]he Constitution does not provide life tenure for those performing judicial functions in military trials. * * * Nor does the Constitution protect their salaries as it does judicial salaries."); *Sanford v. U.S.,* 586 F3d 28, 35 (DC Cir 2009) ("[T]he Sixth Amendment right to a criminal jury trial does not, itself, apply to the military.").

In light of those structural distinctions between courts vested with authority under Article III, and courts-martial, authorized by Congress pursuant to its Article I powers, we conclude that a "federal court" under ORS 137.717 is a criminal court that derives its authority from Article III. A court-martial does not fit that bill. Therefore, court-martial convictions are not "previous conviction[s]" under ORS 137.717(4). Accordingly, the trial court erred when it sentenced defendant as a repeat property offender subject to ORS 137.717(1)(b).[7]

---

[7] Defendant also argues on appeal that the trial court's use of his court-martial convictions to enhance his sentence under ORS 137.717 violated his rights under the Sixth Amendment to the United States Constitution. However, because we

Defendant also assigns error to the trial court's failure to merge his guilty verdicts for 12 counts of negotiating a bad check with his guilty verdicts for first- and second-degree theft. As stated above, defendant pleaded guilty to 12 counts of negotiating a bad check, two counts of first-degree theft, and one count of second-degree theft. The prosecutor aggregated the 12 counts of negotiating a bad check in order to produce the three theft counts.[8] At defendant's sentencing hearing, the state argued that defendant's guilty verdicts for 12 counts of negotiating a bad check merged into his guilty verdicts for first- and second-degree theft, and the trial court made a finding to that effect on the record.[9] However, the judgment lists 15 convictions: the theft convictions and 12 convictions for negotiating a bad check. Additionally, the judgment purports to merge each count of negotiating a bad check "[f]or the purposes of imposing sentence."[10]

On appeal, defendant argues that the trial court erred when it failed to merge his guilty verdicts for negotiating a bad check with his guilty verdicts for first- and second-degree theft. Defendant acknowledges that he did not raise

---

decide that court-martial convictions do not qualify as "previous conviction[s]" under ORS 137.717(4), we need not address defendant's Sixth Amendment argument.

[8] ORS 164.115(5) provides:

"The value of single theft transactions may be added together if the thefts were committed:

"(a) Against multiple victims by similar means within a 30-day period; or

"(b) Against the same victim, or two or more persons who are joint owners, within a 180-day period."

[9] The trial court stated:

"So I find that Counts 1 through 5 merge into Count 6. [Defendant] is sentenced on Count 6[, first-degree theft,] as a repeat property crimes offender. Under ORS 137.717, he is sentenced to 13 months' incarceration with the corrections division. I believe that's subject to 12 months' post-prison supervision.

"* * * * *

"As to Counts 7, 8, and 9, those merge into Count 10. He's convicted on Count 10[, first-degree theft,] and he's sentenced to 13 months. That will be consecutive to the sentence in Count 6. Again, 12 months' post-prison supervision.

"Counts 11, 12, 13, 14 merge into Count 15. That's Theft in the Second Degree. That's going to be one year, concurrent with Count 6.

"So it's a total of 26 months."

[10] The judgment reflects that the trial court sentenced defendant only on the first- and second-degree theft convictions.

this issue before the trial court. The state does not dispute that merger is appropriate. Instead, the state argues that, taken together, the judgment and the record demonstrate the intent of the trial court to merge the guilty verdicts and impose only three convictions, and, therefore, "the disposition is as defendant argues it should be." We disagree.

As the state acknowledges, "a trial court's decision is governed by the signed order and not by any statement the judge makes at the conclusion of a proceeding." *State v. Mossman*, 75 Or App 385, 387, 706 P2d 203 (1985). Here, in addition to the three theft counts, the judgment includes convictions for 12 counts of negotiating a bad check. The state and trial court agreed below that defendant's guilty verdicts for 12 counts of negotiating a bad check merged into his remaining guilty verdicts, leaving defendant with only three convictions: two convictions for first-degree theft and one conviction for second-degree theft. Even on appeal, the state does not dispute that merger of defendant's guilty verdicts for negotiating a bad check is appropriate. The judgment's language which purports to "merge" those counts "[f]or the purposes of imposing sentence" does not serve to merge defendant's guilty verdicts, and it does not change the fact that the judgment erroneously attributes an additional 12 convictions to defendant.[11] *See State v. Lepierre*, 235 Or App 391, 395, 232 P3d 982 (2010) (finding error where the trial court entered two convictions for first-degree burglary and merged them for "sentencing purposes" instead of entering only one conviction). We conclude that the trial court's failure to merge defendant's guilty verdicts for the 12 counts of negotiating a bad check with his remaining guilty verdicts constitutes plain error. *See* ORAP 5.45(1) ("[T]he appellate court may consider an error of law apparent on the record.").

---

[11] Also, as we have explained previously, sentences do not merge:

"[T]he terminology in this area of the law is confusing. When two counts of a crime should result in a single conviction, the court should appl[y] the merger statute to guilty verdicts on particular counts, rather than to convictions. *State v. White*, 346 Or 275, 279 n 4, 211 P3d 248 (2009). Thus, apparently, merger of convictions does not exist. Similarly, sentences are not merged; when convictions for two counts or two crimes result in coterminous sentences, the sentences are concurrent."

*State v. Lepierre*, 235 Or App 391, 395, 232 P3d 982 (2010) (internal quotation marks omitted).

Furthermore, the error is one that we exercise our discretion to correct. *See Ailes*, 312 Or at 382 ("[T]he appellate court must exercise its discretion to consider or not to consider the error, and if the court chooses to consider the error, the court must articulate its reasons for doing so."). We have elected to exercise our discretion in several recent merger cases. *See, e.g., State v. Bryan*, 244 Or App 160, 260 P3d 617 (2011) (exercising discretion where the trial court plainly erred in failing to merge two attempted first-degree assault convictions and two menacing convictions); *State v. Rodriguez-Gomez*, 242 Or App 567, 256 P3d 169 (2011) (exercising discretion where the trial court plainly erred in failing to merge lesser-included offenses); *State v. Orobio-Juan*, 220 Or App 446, 186 P3d 326 (2008) (exercising discretion where the trial court plainly erred in failing to merge two fourth-degree assault convictions). As we explained in *State v. Valladares-Juarez*, 219 Or App 561, 564-65, 184 P3d 1131 (2008), a case in which we exercised discretion to correct a trial court's error in failing to merge two first-degree kidnapping convictions:

> "First, the error in this case is grave; the presence of an additional kidnapping conviction on defendant's criminal record misstates the nature and extent of defendant's conduct and could have significant implications with regard to any future calculation of his criminal history. Second, although the state may have an interest in avoiding unnecessary resentencing proceedings, it has no interest in convicting a defendant twice for the same crime. Thus, on balance, the competing interests of the parties in this case weigh in favor of exercising our discretion to correct the error. Moreover, we cannot identify any strategic reason that defendant may have had for not objecting to the entry of separate kidnapping convictions; nor can we identify any reason why the ends of justice would not be served by ensuring that defendant's criminal record accurately reflects the crimes for which he has been convicted. Indeed, the state has not suggested *any* reasons why this court should decline to exercise its discretion to correct the error in this case."

(Citation omitted; emphasis in original.) The reasoning in *Valladares-Juarez* is equally applicable here. Accordingly, we exercise our discretion to correct the trial court's error in

failing to merge defendant's 12 guilty verdicts for negotiating a bad check with his guilty verdicts for first- and second-degree theft.

Reversed and remanded for entry of convictions for two counts of first-degree theft and one count of second-degree theft and for resentencing; otherwise affirmed.